[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 571 
Callie Zinnerman sued Steve Zinnerman on December 21, 1999, seeking a divorce and alleging, as a basis for the divorce, adultery, incompatibility of temperament, and an irretrievable breakdown of the marriage. The husband answered and counterclaimed for a divorce, alleging incompatibility of temperament. Following an ore tenus proceeding, the trial court entered a judgment on August 29, 2000, divorcing the parties. The divorce judgment provided in part as follows:
 "3. That the Wife is awarded as alimony in gross the sum of $9,500.
 "4. That beginning September 15, 2000, and continuing on the 15th day of each month thereafter, the Husband shall pay to the Wife the sum of $750 per month until said alimony in gross is paid in full.
"5. That periodic alimony is hereby reserved.
 "6. That all property, real or personal, in the name of either party shall be that person's property and the other party shall have no claim thereto.
 "7. That the Wife is entitled to a fee for services rendered in this matter and a judgment is hereby rendered against the Husband in the amount of $2,000, for which execution shall issue. Said sum shall be paid within a period of ninety days from the date of this Order."
The husband moved to alter, amend, or vacate the judgment, or, in the alternative, for a new trial, arguing that the trial court erred in awarding the wife an attorney fee of $2,000 and arguing that the award of alimony in gross was based on a judgment obtained by the wife against the husband that had been discharged in bankruptcy, and, therefore, was an impermissible award. The trial court entered an order on October 4, 2000, amending its judgment of divorce and providing:
 "1. That the payment on the alimony in gross is hereby reduced to $450.00 per month beginning on the same date as previously ordered, and payment on *Page 572 
the attorney's fees shall be at $150.00 per month beginning October 15, 2000.
 "2. Arguments concerning the alimony in gross payments by the Former Husband to the Former Wife were not subject to the prior bankruptcy of the Former Husband in that the award was not part of the judgments which had been previously awarded to the Former Wife but which were purged in bankruptcy."
In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court's judgment based on those findings will be presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong.Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App. 1993). This presumption of correctness is based on the trial court's unique position to observe the witnesses and to assess their demeanor and credibility. Hall v.Mazzone, 486 So.2d 408 (Ala. 1986). Additionally, matters of alimony and property division rest soundly within the trial court's discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464
(Ala.Civ.App. 1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App. 1995). Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; their station in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the marriage. Id., at 1067. Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Id. Additionally, an attorney fee may be allowed in a divorce case, in the discretion of the trial court. Holmes v. Holmes,487 So.2d 950 (Ala.Civ.App. 1986).
Each party was 53 years old at the time of the hearing. They were married on November 6, 1988, in Vienna, Illinois. At the time the parties married, the husband was incarcerated at the Vienna Correctional Institution where he was serving a prison sentence for murder. He was released from prison in 1989 and began living with the wife in her home on Starr Street in Montgomery.
During the marriage, the wife opened a daycare center. She earned $17,100 from the operation of the daycare in 1995, and $16,350 from the operation of the daycare in 1996. The wife conveyed her interest in the daycare to her daughter in 1996 and no longer receives income from the operation of the daycare; however, she stated that she still works at the daycare and testified that she receives $849 per month as reimbursement for traveling expenses. The wife stated that the daycare is now a non-profit organization. She testified that the monthly mortgage payment on the daycare facility is $758.73 and that it is paid by her daughter. The wife is also a retired school teacher and earns $1,600 per month in retirement income. She testified that she is currently an evangelist.
The husband testified that he contributed tools, labor, and money to the establishment of the daycare. He was paid minimum wage while he was employed by the daycare. The husband broke into the daycare on one occasion and did damage to it. He stated that he paid for the damage. *Page 573 
The husband testified that he was currently employed as a forklift driver for Ventura Sunnyland in Birmingham and was earning $9.83 per hour.
The parties also leased a building and operated a beauty salon during the course of the marriage. Although it is not entirely clear from the record, it appears that the husband operated the beauty salon and that the wife worked there only occasionally. The parties were sued by Ballard Realty Company over the lease by which they held the beauty-salon property. Again it is not entirely clear from the record why Ballard Realty sued, but it appears that the parties may have abandoned the lease. The wife paid Ballard Realty $10,557.57 in February 1996 to settle the action.
The wife testified that on an occasion in August 1995, when preparing to leave for church, she discovered that her 1987 Cadillac automobile was not in her driveway. She called the police to report the car stolen. The husband was present when the police arrived and the wife completed the incident report. The wife went to church; when she returned home she discovered that the husband and his clothes were gone. She surmised at that point that the husband had also taken her automobile.
In January 1996, officers of the Demopolis Police Department stopped a person driving the wife's automobile. The husband was in the car, and the car was being driven by D.D., a female companion of the husband. The police report indicates that the husband informed the police officer that he "stole the car from his ex-wife back in August of 1995." The husband admitted at trial to taking the wife's automobile and keeping it for four or five months, but denied he had stolen it; he had not "stolen" it, he said, because, he had helped make the monthly payments on it. The husband's name was not on the title to the automobile. He was charged with receiving stolen property. The wife sued the husband for $10,000 for damage done to the automobile while it was in his possession.
The husband petitioned for bankruptcy in May 1998. He listed, among the claims held by creditors, the claim by his wife for $10,000 and the claim made by Ballard Realty, which had already been satisfied by the wife. The husband was discharged in bankruptcy on August 25, 1998.
The husband testified that he had had sexual relations with D.D.; however, he stated that he did not meet D.D. until "two or three years" after he and the wife had separated.[1] The husband stated that he had moved back in with the wife on several occasions from January 1996 until July 1996, in an attempt to reconcile and salvage the marriage. He stated that the last attempt in July 1996 lasted two days.
The wife testified that the husband telephoned her in April 1996, stating that he wanted to come home. The wife stated that she met him in Birmingham and that they drove to Faunsdale to retrieve the husband's belongings from D.D.'s house. The parties returned home; however, the wife said the husband left again five days later. The wife testified that she has not forgiven the husband for his adultery.
The wife testified that on one occasion when the parties were attempting to reconcile, the husband expressed a desire to start a business in Faunsdale. The wife stated that she purchased the husband a trailer for the business; however, she said, four days later the husband told her that he "could not let go" of D.D. and left the *Page 574 
wife again. The wife testified that the venture cost her $2,600.
The wife conveyed her property on Starr Street to her daughter, and that property was ultimately sold. In 1998 the wife purchased a new home on in Montgomery for $220,000. The monthly mortgage payment on that home is $2,100. The wife stated that the home was a "family house" and that she and her daughter both pay the monthly mortgage.
The husband argues that the trial court erred in awarding the wife alimony in gross of $9,500, because, he says, he has no separate assets sufficient to pay the alimony in gross. We agree. "`Alimony in gross' is the present value of the wife's inchoate marital rights — dower, homestead, quarantine, and distributive share. It is payable out of the husband's present estate as it exists at the time of divorce." Murphyv. Murphy, 624 So.2d 620, 622 (Ala.Civ.App. 1993), quoting Hager v.Hager, 293 Ala. 47, 299 So.2d 743 (1974) (emphasis added).
The record contains no evidence indicating the husband has a separate estate from which he could pay the alimony-in-gross award. He had been discharged in bankruptcy approximately two years before the trial of the case. The wife was awarded all of the major assets of the marriage. According to the evidence presented, the husband had only his job, at which he earned $9.83 per hour as a forklift driver. We recognize the husband's conduct as reprehensible; however, we conclude that at the time of divorce his estate was insufficient to satisfy the award of alimony in gross. Murphy, supra. Accordingly, we must reverse the judgment insofar as it awards alimony in gross. On remand, the trial court is to enter an order consistent with this opinion.
The husband next argues that the trial court erred in awarding the wife an attorney fee of $2,000. This court has stated:
 "Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney. Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee."
Davis v. Davis, 686 So.2d 1245, 1249 (Ala.Civ.App. 1996) (citations omitted). After reviewing the record in this case and after considering the husband's conduct during the marriage, we cannot say the trial court abused its discretion in awarding the wife an attorney fee of $2,000.
The husband next argues that the trial court erred in basing the divorce on the grounds of adultery. Adultery may be proven by circumstantial evidence; however, evidence that creates a mere suspicion of adultery is not sufficient. Yates v. Yates, 676 So.2d 365
(Ala.Civ.App. 1996). The circumstances shown by the evidence must be such as to lead the guarded discretion of a reasonable man to conclude that adultery has been committed. Id. When adultery is alleged in a divorce complaint, "incidents of adultery subsequent to the filing of the divorce petition are admissible to corroborate evidence of adultery prior to the date of filing, but the subsequent incidents cannot be the sole basis to *Page 575 
grant the divorce." Smith v. Smith, 599 So.2d 1182, 1184 (Ala.Civ.App. 1991). "`Condonation means the willing continuance of cohabitation, a living together in the same place from which fact sexual intercourse may in general be presumed.'" Rush v. Rush, 551 So.2d 1075, 1076
(Ala.Civ.App. 1989), quoting Latham v. Latham, 54 Ala. App. 305, 307,307 So.2d 703, 707 (Ala.Civ.App. 1975). "Condonation" in the context of a divorce case means forgiveness by the offended spouse. Id. Where there has been a condonation of adultery, a divorce may not be granted on the ground of adultery. Id. Something more than a temporary cohabitive relationship must occur in order to support a finding of condonation in a divorce proceeding. Id.
After carefully reviewing the record in this case, we cannot say the court erred in basing the divorce on the grounds of the husband's adultery. The husband admitted to having sexual relations with D.D.; however, his testimony as to when he first met D.D. was less than credible. Both parties testified that they attempted reconciliation, but that the attempts lasted for only a few days. Finally, the wife testified that she had not forgiven the husband or condoned his affair with D.D.
The wife's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Crawley, Thompson, Pittman, and Murdock, JJ., concur.
[1] This testimony is conflicting, because the husband and D.D. were stopped while driving the wife's automobile in January 1996, some five months after the parties had separated.