On March 3, 1998, Deborah Ann Mahaffey sued Houston Edward Mahaffey for a divorce. The trial court conducted an ore tenus trial over the course of six days. On August 9, 2000, the trial court entered a judgment that divorced the parties, fashioned a property division, awarded the wife alimony, and ordered the husband to pay $25,000 toward the wife's attorney fees. Both parties filed postjudgment motions pursuant to Rule 59, Ala.R.Civ.P. On October 3, 2000, the trial court entered an order that, among other things, modified the periodic-alimony provision of the original divorce judgment. The wife appealed, arguing that the trial court erred in fashioning its property division and its alimony award.
A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is afforded a presumption of correctness. Parrish v. Parrish, 617 So.2d 1036
(Ala.Civ.App. 1993). On appeal, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is so unsupported by the evidence as to amount to an abuse of discretion. Id. A property division is required to be equitable, but not necessarily equal; the trial court makes the determination of what is equitable. Duckett v. Duckett, 669 So.2d 195
(Ala.Civ.App. 1995); Parrish, supra. Some factors the trial court should consider in dividing marital property and setting alimony payments include "(1) the earning ability of the parties; (2) their probable future prospects; (3) their age, . . . health and station in life; (4) the duration of the marriage; and (5) the conduct of the parties with reference to the cause of [the] divorce." Echols v. Echols, 459 So.2d 910,911-12 (Ala.Civ.App. 1984).
The parties were married for approximately three years in the early 1970s and then were divorced. They remarried on May 26, 1976; they separated in February 1998. No children were born of either of the parties' marriages. The husband has two sons from a previous marriage; it is undisputed that the wife helped rear those children. At the time of trial, the wife was 49 years old. The husband was 63 years old, and he has asbestosis.
In August or September 1977, the parties purchased an existing boat dealership. Both parties worked at that business, which was their sole source of income for the vast majority of the marriage. The wife quit working at the business in 1987; the husband continues to operate the business.
Most of the evidence in the record concerns the business and the accounting practices used in the business. The record indicates that various personal expenses for the parties, their family members, and some employees were paid through the business; examples include the salary for the parties' housekeeper and payments on the mortgage indebtedness on the homes belonging to the husband's sons. The evidence also reveals that the business used some unorthodox accounting practices. For example, an employee of the business and one of the husband's sons obtained home-equity loans on their homes and gave the proceeds of those loans to the business; the business makes the monthly payments on those home-equity loans.
The record indicates that the business has a value of approximately $1,092,000. The business and the parties' marital residence are subject to an indebtedness of *Page 1289 
approximately $900,000. The husband testified that the business also has $4,750,000 in debt on "the floor plan." The husband owns 92% of the stock in the business.
The record indicates that the business was not profitable in the two years before the hearing on the wife's complaint for a divorce. The husband had consulted a bankruptcy attorney regarding the financial condition of the business; on the advice of that attorney, the husband placed the business's bank accounts in different banks to prevent the business's assets from being frozen if it failed to meet its debt obligations.
At times during their marriage, the parties received approximately $10,000 per month in income from the business. The business also paid for many of the parties' personal expenses. However, since the business began experiencing financial difficulties, the husband has received approximately $2,500 per month from the business.
The husband testified that the parties purchased their marital residence for approximately $160,000. He also testified that in the early 1990s, the wife spent more than $100,000 renovating and redecorating the marital residence. The husband valued the marital residence at approximately $225,000. The wife testified that the parties paid $190,000 to purchase the house, that they spent $150,000 in renovations and redecorating, and that, therefore, the value of the marital home was $340,000. The wife testified that the furnishings in the marital home were worth $125,000; the husband testified that the furnishings were worth $75,000 to $80,000. The marital residence is listed as collateral on the $900,000 business loan for the business.
The parties also own a condominium in Orange Beach. In 1999, the parties sold a parcel of real property; the wife received a net profit of $75,000 from that sale. She testified that she spent that money, plus additional funds, renovating and redecorating the beach condominium. The wife valued the beach condominium at $400,000, and she testified that the furnishings in the beach condominium were worth $100,000. The husband testified that the beach condominium was worth $350,000. The beach condominium is not subject to any mortgage indebtedness.
The parties also own a parcel of real estate referred to as the "Hickory Road property"; that property was valued at $45,000, and it is not subject to indebtedness. The husband owns a 60% interest in a 10-acre "farm"; the husband valued his interest at $15,000. The husband testified that he also owned some real property located adjacent to the business; that property was also used as collateral to obtain the $900,000 business loan. The value of that property totals $86,600. The husband has an IRA valued at $25,000 and another IRA with a value of $900. The husband also receives checks from an undisclosed source related to his on-the-job contraction of asbestosis.
The wife drives a Mercedes automobile that the husband testified was worth approximately $35,000 to $40,000; the wife testified that automobile was worth $26,500. After the parties separated, the husband borrowed $40,000 for his business or personal use; he used the Mercedes as collateral for that loan. Shortly before the trial, the husband obtained alternative financing — a loan — and through that loan repaid $20,000 in consumer debt and the $40,000 loan secured by the Mercedes. Therefore, at the time of trial, the husband had clear title to the Mercedes.
The wife has two IRAs, one with a value of $51,421 and another with a value of *Page 1290 
approximately $5,000. Both parties own various pieces of jewelry, and the wife owns six fur coats.
Both parties made allegations of adultery against the other. The wife alleged that the husband had an affair with a woman who has been employed at the business for a number of years; she presented evidence indicating that the woman had accompanied the husband on business trips and, since the parties' separation, on personal trips. Both the husband and the woman disputed the wife's testimony and allegations regarding the business trips; they also denied having an intimate relationship.
The husband testified that, toward the end of the marriage but before their separation, the wife spent a great deal of time at the parties' beach condominium; he stated that the wife's absence from the marital home contributed to the breakdown of the parties' marriage. The husband presented evidence indicating that the wife had had an affair shortly after the parties separated. The wife admitted that, shortly after the parties separated, she had a brief affair with a man who lives in a nearby beach condominium. She denied the husband's allegations that that relationship had continued until the time of trial. The man with whom the wife had the affair testified by deposition; he pleaded theFifth Amendment to the United States Constitution throughout that deposition, refusing to answer questions regarding the nature of his relationship with the wife. Since the parties' separation, the wife has lived in the beach condominium; she currently works at a dress shop and earns $7 per hour. The wife was 49 years old at the time of the trial; she testified that she is unable to work full-time because she has bunions on her feet.
Although it noted the parties' allegations of adultery, the trial court divorced the parties on the grounds of incompatibility. The trial court found that the husband had not committed adultery and that any postseparation indiscretions of the wife had not contributed to the breakdown of the parties' marriage. The trial court found that the parties had created a very successful business that, although it had not been as profitable as expected in the last few years, could still provide sufficient income for the parties to live comfortably. The trial court also specifically found that the parties' marital assets were worth over $2,000,000.
In its divorce judgment, the trial court awarded the wife the beach condominium and its furnishings; the Hickory Road property; her Mercedes; her IRAs; her jewelry and furs; and a $25,000 attorney fee. As "alimony in gross," the trial court ordered that the wife be held harmless for one-half of any liability she might incur as a result of a lawsuit related to the sale of certain real property located near the business. The wife was awarded the life-insurance policy on her own life, and the trial court ordered that the wife be the beneficiary of a $500,000 life-insurance policy on the husband's life. The trial court also ordered that the husband pay the wife $13,866, representing the amount of an outstanding note the husband had issued to the wife in exchange for her stock in the business. In addition, the wife was awarded $3,000 per month in periodic alimony. The trial court ordered the wife to pay the credit-card and other indebtedness in her name; that indebtedness totaled $24,530.
The husband was awarded all of his interest in the business; the marital home and its furnishings; his interest in the "farm"; his IRAs; and all rights to the *Page 1291 
funds to be paid on his asbestosis claim. The husband was also ordered to be responsible for all debts in his own name.
The wife argues that the trial court erred in its alimony-in-gross award. As "alimony in gross," the trial court ordered that the husband be responsible for one-half of any liability the wife might incur as a result of a lawsuit pending against her that relates to a sale of real property located near the husband's business. The wife contends that the award was improper because the time and amount of the payment were not certain. See Bonham v. Bonham, 623 So.2d 337 (Ala.Civ.App. 1993). However, the substance of an award, and not its title, governs the determination of the kind of award it is. Cheek v. Cheek, 500 So.2d 17,19 (Ala.Civ.App. 1986). "In this court's opinion, the award . . . would be better viewed as part of the property division. The `label' given to the award . . ., however, does not affect the outcome in this case."Dyar v. Dyar, 484 So.2d 1116, 1116 (Ala.Civ.App. 1986). We conclude that the provision regarding the potential lawsuit liability was a part of the trial court's property division, and that any error arising from the designation of that provision as "alimony in gross" was harmless. See
Rule 45, Ala.R.App.P.
The wife argues that the trial court abused its discretion in fashioning its property division and its alimony award. In making this argument, the wife states in her brief on appeal that she was awarded only $430,000, or, she alleges, 16% of the parties' marital assets. However, the wife's own valuations of the beach condominium and its furnishings alone exceed the total amount she claims she was awarded in the divorce judgment. The wife fails to provide this court with a breakdown of her estimate of the amounts awarded to the parties under the divorce judgment, and she does not explain which assets she included in her calculations. The record contains more than 1,600 pages of testimony, and the parties submitted into evidence a total of 147 exhibits. This court's review of the record indicates that the wife received, according to her valuations, approximately $650,000 in marital assets, plus her jewelry, furs, the insurance policies on her life and the husband's life, and the partial relief from liability from the pending lawsuit. The divorce judgment also provides that the wife receive $3,000 per month in periodic alimony.
The husband was awarded his business and the marital home, which are subject to the same $900,000 indebtedness. The husband was awarded his interest in the farm and his IRAs. The husband was ordered to be responsible for the debts in his name, including the debt incurred to consolidate his own consumer debt and debt on the Mercedes. Thus, the vast majority of the assets awarded to the husband are subject to the $900,000 indebtedness for the business.
A property division must be equitable, but it need not be equal.Parrish, supra; Duckett v. Duckett, supra. The wife was awarded a significant portion of the marital property, free from any indebtedness, and she was awarded $3,000 per month in periodic alimony. The husband presented evidence indicating that the business was experiencing financial difficulties; he also testified that his income from the business had reduced significantly. The trial court observed the parties and their witnesses over the course of the six-day hearing and was, therefore, in a unique position to assess their demeanor and credibility; therefore, *Page 1292 
the trial court's judgment based on its findings of fact are entitled to a presumption of correctness on appeal. Hall v. Mazzone, 486 So.2d 408
(Ala. 1986). This court has reviewed the record on appeal and has considered the arguments in the wife's brief. We are unable to say that the wife has demonstrated that the trial court's property division and its award of alimony were plainly and palpably wrong.
The wife also argues that the trial court erred in awarding her only $25,000 as an attorney fee.
 "In arriving at the value of legal services performed in a divorce action, the trial court may properly consider the following: (1) the nature and value of the subject matter of employment; (2) the learning, skill, and labor necessary to the proper discharge of that employment; (3) the time consumed on the matter in dispute; (4) the professional ability, experience, and reputation of the attorney performing the services; (5) the weight of his responsibility; (6) the measure of success achieved; (7) any reasonable expenses incurred in the representation of a client; and (8) the fee customarily charged in the locality for similar services. Moreover, the trial court in determining a reasonable attorney's fee may rely on opinion evidence of experts on the subject of fees, and on its own knowledge and experience as to the value of the services performed. Likewise, the earning capacity of the parties and the financial circumstances of the husband may also be considered in establishing the amount of money to which an attorney is entitled for his services."
Lochridge v. Lochridge, 448 So.2d 378, 380-81 (Ala.Civ.App. 1984) (citations omitted).
The parties stipulated that if the trial court were to award the wife an attorney fee, that fee could be based on the testimony of the wife's attorney and on the trial court's own knowledge of reasonable legal fees for the area in which the litigation took place. A detailed recitation of the procedural history of this action is unnecessary. Suffice it to say that each party argues that the other party increased litigation expenses by failing to cooperate with discovery requests and by other means. Before the trial court, the parties disputed the necessity of certain aspects of the divorce litigation, and the husband disputed some of the charges submitted by the wife's attorney. The trial judge presided over the hearings on the parties' discovery disputes and over the six-day trial. Therefore, the trial court was in the best position to evaluate the merits of the parties' arguments related to the issue of an award of an attorney fee. This court reviews an award of an attorney fee on an abuse-of-discretion standard. Brasfield v. Brasfield, 679 So.2d 1091
(Ala.Civ.App. 1996). We simply cannot say that the trial court abused its discretion in its award of an attorney fee.
The judgment of the trial court is due to be affirmed.
The husband's request for an attorney fee is denied.
AFFIRMED.
Pittman and Murdock, JJ., concur.
Yates, P.J., and Crawley, J., concur in the result.
 *Page 674