MURDOCK, Justice.
 

 Randell L. Dickson (“the husband”) petitioned this Court for a writ of certiorari after the Court of Civil Appeals affirmed, without an opinion, a divorce judgment that, among other things, awarded Emily Vandiver Dickson (“the wife”) alimony in gross in an amount substantially exceeding the value of the husband’s present estate.
 
 Dickson v. Dickson
 
 (No. 2050945, May 25, 2007), 12 So.3d 169 (Ala.Civ.App.2007) (table). We granted certiorari review to determine whether the Court of Civil Appeals’ decision conflicts with
 
 Ex parte Hager,
 
 293 Ala. 47, 55, 299 So.2d 743, 750 (1974), and
 
 Zinneman v. Zinnerman,
 
 803 So.2d 569, 574 (Ala.Civ.App.2001).
 

 Facts
 

 The parties met in 2000 and were married in 2001; both parties were 52 years old at the time of the marriage. The parties separated approximately three years later, in 2004; they divorced in 2006. There were no children from this mar
 
 *160
 
 riage, but each party has adult children from a previous marriage.
 

 When the parties met in 2000, the husband was struggling financially. He had a real-estate and construction business that was losing money because the houses he built were not selling. The husband had borrowed substantial sums from his business partner to cover the costs incurred in connection with the unsold houses. In February 2000, the husband signed a note to his business partner in the amount of $140,000, which was secured by an assignment of the husband’s interest in Dickson Realty, Inc., Security Boys Properties, L.L.C., and Monrovia Farms Development, Inc. By 2006, the husband owed his business partner an additional $113,036 in unsecured debt.
 

 In August 2000, the husband sold his residence because he could no longer afford the mortgage payments, and he moved in with the wife. At that time, the husband agreed to share expenses with the wife “fifty-fifty.” In December 2000, the husband executed a line-of-credit promissory note in favor of the wife, which provided that the husband would repay the wife for his share of certain expenses plus interest. Attached to the note was a ledger on which the parties periodically entered debits (e.gr., the husband’s share of household expenses and certain major purchases) and credits. The husband testified that he did not intend for the line-of-credit arrangement to continue after the parties married, but the wife continued to enter debits and credits on the ledger until the parties separated in 2004.
 

 The parties disagree on the amount owed on the line-of-credit note at the time of the trial. The wife testified that the husband owed her $ 137,775. The husband testified that he owed the wife approximately $22,000 after attributing to him a credit for substantial tax savings resulting from the parties’ joint use of the husband’s prior years’ tax losses. It appears that the trial court agreed with the wife’s contention as to the amount owed; there is evidence in the record to support the wife’s contention.
 
 [1]
 

 By 2004, the parties were having disagreements over money and over the conduct of the wife’s adult son, who had moved into the marital residence and later moved out. In July 2004, the husband moved out of the marital residence after the wife told him that she would allow her adult son to move back into the marital residence. Shortly thereafter, the husband purchased a house without making any down payment.
 

 In October 2004, the husband filed the present action, seeking a divorce and an equitable distribution of the parties’ assets. The wife filed an answer and a counterclaim, seeking a divorce and an equitable distribution of assets. Neither party requested periodic alimony or support. In October 2005, the wife filed an amendment to her counterclaim, seeking enforcement of the line-of-credit note. Approximately one week later, the husband filed a petition for bankruptcy, listing as creditors the wife, his business partner, certain credit-card creditors, and others. The husband’s bankruptcy petition sought, among other things, the discharge of the debt arising out of the line-of-credit note. In the bankruptcy proceeding, the wife objected to the discharge of the husband’s debt to her. It appears that, at the time of trial in this case, the bankruptcy proceeding concern
 
 *161
 
 ing the line-of-credit note had not been resolved.
 

 The evidence in the record discloses that the husband’s separate estate, at the time of the trial, was approximately $22,000, including (1) personal property worth approximately $12,000, which was subject to a demand by the husband’s bankruptcy trustee that the husband pay $10,000 in lieu of forfeiture of his nonexempt personal property (which the husband valued at $9,150);
 
 [2]
 
 (2) the house the husband purchased after he moved out of the marital residence, in which he had an equity of approximately $800; (3) a savings account at AmSouth Bank, with an approximate value of $10,000; (4) AmSouth Bank stock valued at approximately $4,400; and (5) a 401(k) retirement account at AmSouth Bank
 
 (see
 
 discussion below), with a value of approximately $16,000. The husband’s vehicles, furniture, and similar items were leased or financed, and he had little or no equity in them.
 

 The record does not contain any evidence of the value, if any, of the husband’s interest in his three businesses. The husband testified that he had assigned his interests in those businesses to secure the $140,000 note to his business partner and that he had no equity interest in those businesses.
 

 Following the parties’ separation and before trial in June 2006, the husband began working for AmSouth Bank, with a base salary of $67,000. The husband received an incentive bonus of approximately $12,000 for 2004 and an incentive bonus in excess of $30,000 for 2005. There is evidence in the record indicating that the husband’s base salary for 2006 was projected to be approximately the same as it was in 2004 and 2005.
 

 During the marriage, the wife had been employed as a civil-service engineer with the United States Army, earning approximately $138,000 in 2004. Shortly before the trial, the wife voluntarily retired from her employment; she gave no reason for retiring other than the fact that she “had the number of years and the age factor.” There is evidence in the record that the wife was receiving a pension of more than $6,000 per month before taxes. There does not appear to be any impediment to the wife’s seeking employment in the private sector.
 

 In July 2006, after a trial at which ore tenus evidence was presented, the trial court rendered a judgment divorcing the parties and awarding the wife (1) all of her separate property, all the parties’ jointly owned property, and certain of the husband’s separate property (including but not limited to all the husband’s savings account at AmSouth Bank and half of the husband’s AmSouth Bank stock), (2) alimony in gross in the amount of $137,775, less the amount received by the wife from the husband’s savings account (approximately $10,000), payable in monthly installments of $1,000, and (3) the sum of $16,266.40, for her attorney fees. The divorce judgment did not award periodic alimony to either party.
 

 Analysis
 

 It is well settled that “
 
 [1]
 
 “[property divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court.” ’ ”
 
 Ex parte Durbin,
 
 818 So.2d 404, 408 (Ala.2001) (quoting
 
 Morgan v. Morgan,
 
 686 So.2d 308, 310 (Ala.Civ.App.1996), quoting in turn
 
 Duck
 
 
 *162
 

 ett v. Duckett,
 
 669 So.2d 195, 197 (Ala.Civ.App.1995)). An appellate court may not substitute its judgment for that of the trial court or reweigh the evidence.
 
 Ex parte Foley,
 
 864 So.2d 1094, 1099 (Ala.2003).
 

 Citing
 
 Ex parte Hager
 
 and
 
 Zinnerman,
 
 the husband contends that the trial court’s property division was in error because the amount of alimony in gross awarded the wife by the trial court greatly exceeded the value of the husband’s present estate,
 
 ie.,
 
 the husband’s estate as it existed at the time of the judgment. The husband correctly argues in his brief to this Court that an award of alimony in gross must be made based on the value of the marital estate and the parties’ separate estates and not on the anticipated future earnings of the payor. He argues that the trial court failed to apply this principle in the present case. We agree.
 

 In its order, the trial court found that the husband’s current income and other current circumstances give him the financial ability to pay alimony-in-gross installments of $1,000 per month, going forward. We do not discern, however, from the trial court’s judgment a finding that the amount of the husband’s estate, as it existed at the time the judgment of divorce was entered, was sufficiently large to justify the $137,775 alimony-in-gross award, as entered by the trial court.
 
 [3]
 
 Consistent with the discussion of the evidence as set forth above, our review of the record leads us to conclude that the record does not contain substantial evidence supporting such a factual finding. To the contrary, it is clear that the alimony-in-gross award made by the trial court substantially exceeded any value that could be drawn from the evidence regarding the husband’s estate at the time of the divorce.
 

 In
 
 Hager,
 
 this Court defined alimony in gross and periodic alimony as follows:
 

 “ ‘Alimony in gross’ is the present value of the wife’s inchoate marital rights— dower, homestead, quarantine, and distributive share.
 
 It is payable out of the husband’s present estate as it exists at the time of divorce. Borton v. Borton,
 
 [230 Ala. 630, 162 So. 529 (1935).] On the other hand, ‘periodic alimony’ is an allowance for the future support of the wife payable from the current earnings of the husband.”
 

 293 Ala. at 55, 299 So.2d at 750 (emphasis added).
 
 [4]
 
 The
 
 Hager
 
 Court also stated that the award at issue “was intended to be, as denominated, ‘alimony in gross,’ a property settlement award,
 
 compensating the wife only for the loss of her tights in the husband’s estate.”
 
 293 Ala. at 55, 299 So.2d at 751 (emphasis added).
 
 See also Daniel v. Daniel,
 
 841 So.2d 1246, 1250 (Ala.Civ.App.2002) (alimony in gross is a form of property settlement and must be payable out of the present estate of the payor at the time of the divorce).
 

 In
 
 Zinnerman,
 
 803 So.2d at 574, the Court of Civil Appeals reversed a judgment awarding alimony in gross because, “at the time of the divorce [the husband’s] estate was insufficient to satisfy the award of alimony in gross.” The court stated:
 

 
 *163
 
 “ ‘ “ ‘Alimony in gross’ is the present value of the wife’s inchoate marital rights — -dower, homestead, quarantine, and distributive share. It is payable out of the husband’s present estate
 
 as it exists at the time of divorce.”
 
 ’
 
 Murphy v. Murphy,
 
 624 So.2d 620, 622 (Ala.Civ.App.1993), quoting
 
 Hager v. Hager,
 
 293 Ala. 47, 299 So.2d 743 (1974) (emphasis added [in
 
 Zinnerman
 
 ]).”
 

 803 So.2d at 574.
 
 See also Johnson v. Johnson,
 
 840 So.2d 909, 912 (Ala.Civ.App.2002) (alimony in gross “ ‘ “is payable out of the husband’s present estate as it exists
 
 at the time of the
 
 divorce(quoting
 
 Hager,
 
 293 Ala. at 55, 299 So.2d at 750) (emphasis added in
 
 Johnson)); Epps v. Epps,
 
 218 Ala. 667, 669, 120 So. 150, 151 (1929) (allowance of $100 per month was considered to be periodic alimony because it was “equivalent to [the wife’s] share in quite a considerable estate. The husband had no such estate.”).
 

 The wife contends that
 
 Boykin v. Boykin,
 
 628 So.2d 949, 952 (Ala.Civ.App.1993), creates a “bankruptcy exception” to the
 
 Hager
 
 principle and thus supports the award of alimony in gross in this case. That contention fails. It is true that the ex-husband in
 
 Boykin,
 
 in making a general argument that the alimony-in-gross award was excessive, contended that he had filed for bankruptcy before the parties separated. Contrary to the manner in which the wife suggests that a “bankruptcy exception” should operate in the present case, the ex-husband in
 
 Boykin
 
 was attempting to use the fact of his bankruptcy as a factor in support of
 
 reducing
 
 the property award in that case.
 

 Furthermore, the fact of the ex-husband’s bankruptcy played no apparent role in the Court of Civil Appeals’ analysis of the ex-husband’s position. 628 So.2d at 952. The
 
 Boykin
 
 court affirmed the alimony-in-gross award in that ease based on its application of the general principle that divisions of property must be equitable.
 
 Id.
 
 We therefore see in
 
 Boykin
 
 no “bankruptcy exception” to the principle that an award of alimony in gross, as part of the division of the parties’ property, must be made out of the present estate of the payor at the time of the divorce.
 

 The wife also contends that, under
 
 Mahaffey v. Mahaffey,
 
 806 So.2d 1286, 1291 (Ala.Civ.App.2001), the appellate courts are allowed to “relabel” the award of alimony in gross in order to do equity. The wife does not specify, however, how the alimony-in-gross award should be relabeled. Moreover,
 
 Mahaffey
 
 does not support the wife’s contention.
 

 In
 
 Mahajfey,
 
 the judgment ordered the husband to pay, as alimony in gross, one-half of any liability the wife might incur as a result of a pending lawsuit relating to a real-estate sale. The Court of Civil Appeals concluded that the designation of that obligation as “alimony in gross” was improper because the time and amount of the payment were not certain. The court noted that “the substance of an award, and not its title, governs the determination of the kind of award it is.” 806 So.2d at 1291. The court concluded that the provision regarding the potential liability was a part of the property division and that the designation of the potential liability as “alimony in gross” was harmless.
 

 In the present case, however, the trial court’s error is not harmless and could not be saved by relabeling. Whether denominated as part of the general property division or, more specifically, as alimony in gross, the award is improper because it exceeded the value of the husband’s estate at the time of the divorce.
 

 Based on the facts before us, it appears that the trial court erred by awarding the wife alimony in gross in an amount far exceeding the value of the husband’s estate
 
 *164
 
 at the time of the divorce. Accordingly, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . The trial court did not make an express finding as to the amount owed under the line-of-credit note, but it awarded the wife alimony in gross in the exact amount she claimed ihe husband owed her, and it referred to the note in the paragraph explaining its reasons for the award of alimony in gross.
 

 [2]
 

 . The record does not disclose the resolution of the negotiation concerning payment for the husband's nonexempt property.
 

 [3]
 

 . A fortiori, if the additional $16,266.40 awarded the wife by the trial court for attorney fees is considered part of the alimony-in-gross award (which is the way the trial court considered it), the resulting total of $154,041.40 would exceed by that much more the value of the husband’s estate as it existed at that time.
 

 [4]
 

 . In general, an award of alimony in gross “must satisfy two [other] requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested.”
 
 Cheek v. Cheek,
 
 500 So.2d 17, 18 (Ala.Civ.App.1986). Those two requirements do not appear to be at issue in this case.