DONALDSON, Judge.
Anthony Scott House (“the husband”) appeals and Lee Anne House (“the wife”) cross-appeals from a divorce judgment of the Monroe Circuit Court (“the trial court”) entered following a trial. The judgment ordered the husband to pay the wife alimony in gross. The husband filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., seeking to alter, amend, or vacate the judgment or to “hold a new trial or hear additional evidence.” In the motion, the husband argued that the evidence presented at trial did' not establish that the husband’s estate at the time of the divorce was sufficient to pay the awarded amount of alimony in gross. The husbánd requested a hearing on the motion; however, the motion was’ denied without a hearing. ' In Her cross-appeal, the wife asserts that the trial court should have awarded periodic alimony to her. Because the husband’s Rule 59 motion appears to be meritorious, the husband was entitled to be heard on his motion. Accordingly, we reverse the trial court’s order denying the husband’s Rule 59 motion and reman'd the case to the trial court for it to hold a hearing on the' motion and to determine the appropriate relief to be granted. Because the wife did hot request periodic alimony in the trial court or present sufficient arguments on appeal as to why the fáiluré to awárd periodic alimony ón this record is reversible, we affirm, the divorce judgment insofar as it does not include an award of periodic alimony to the ’ wife, which is the only issue the wife raises in her cross-appeal.

Facts and Procedural History

The wife and the husband were married on August 14, 1999. At the time of the divorce, the husband was 38 years old and the wife was 37. They have three minor children who were born in 2003, 2007, and 2010, respectively. At the time of the marriage, the husband was in college and the wife worked as an elementary-school teacher. The husband graduated from college in 2000 with a degree in chemical engineering and worked as an engineer from 2000-200.6. In June 2006, the wife obtained a master’s degree in education.
The couple lived together in the marital residence in Monroe County. After several years of marriagé, the husband decided *1114 he wanted to become a physician, and he was accepted to medical school in Mobile. In August 2006, the husband left the marital residence and moved to Mobile to begin attending medical school. The husband graduated medical school in 2010 and completed his medical residency in Mobile. The wife and the children remained in Monroe County while the husband was in medical school and while he completed his medical residency.
In June 2012, the husband learned that the wife was having an affair.. The husband subsequently became involved in a romantic relationship with someone else.
On September 4, 2012, the wife.filed.a complaint for. , a divorce in the trial court. On December 18, 2012, the trial court entered a temporary order incorporating an agreement between the parties. providing for joint legal custody- of the children but placing physical custody with the wife and granting visitation to the husband. Pursuant to the .agreement and the temporary order, the husband was responsible for paying child support in the amount of $1,050 a month.
A trial was held on December 12, 2013. The wife testified that the husband had returned to the marital home twice a month when he had attended medical school but that he had not returned often during his residency. While the husband had lived in Mobile, the wife had cared for the children, had managed the household, and had paid the mortgage payments for the marital residence. She testified-to having had financial difficulties in maintaining the expenses of the marital home and in raising the children. • ¡'
After completing his residency in 2013, the husband moved back to Monroe County, where he began working as a medical doctor. At trial, the husband was earning approximately $78,000 annually. The wife worked as an assistant principal, for an elementary school, earning $55,492 a year.
The marital home is a house built in 2005 on land the parties received as a gift from the wife’s parents. The construction cost was $85,000. The husband contributed $17,000 for a down payment on the marital home, which he obtained by depleting all the funds in his retirement account. Evidence presented at trial valued the marital home at $135,000. The balance of the mortgage at the time of the .final hearing was $58,286. The wife testified that the equity in the property was approximately $76,700. The husband testified that the value of the contents of the house was $5,000.' The wife testified that the value of the contents was $1,000.'
At the time of the final hearing, the husband drove a 2011 Toyota Tundra with a value of $26,000 and debt of $26,000. The wife drove a 2004 Ford Expedition worth $5,000. The wife had a retirement account valued at $1,965.74 on August 1, 1999, and another account valued at $43,020.59 on December 5, 2013, and $36,010 on July 1, 2012. The wife also had a third retirement account valued at $28,963. The husband owned a whole-life insurance policy with a cash value of $4,000 and a term-life insurance policy on his own life with a death benefit of $352,000. The wife had a whole-life insurance policy with a cash value of $4,000 and a term-life insurance policy on her own life with a death benefit of $437,000.
The balance on the husband’s student loans the husband had obtained to attend medical school totaled $181,005. The husband also had received $120,000 in a forgivable loan from, the Rural Health Foundation. ' The husband testified that the $120,000 loan will be. forgiven if he practices medicine in a rural area for a certain amount of time, which was not specified in the record. The wife had a balance on her student-loan debt of $2,500 and a credit-card balance of $6,000.
*1115 On March 21, 2014, the trial court entered a judgment divorcing the parties. The judgment incorporated an agreement between the parties maintaining joint legal custody of the children, physical custody of the children with the wife, and visitation for the husband. The husband’s child-support obligation was established at $1,230 a month, and the parties were ordered to split the cost of the youngest child’s preschool education. The trial court also made the following findings of fact:
“2. The Court finds from the evidence, at the time the [husband]' left his job as an enginéer to attend medical school his annual gross earnings were approximately $50,000 and [the. wife’s] annual gross earnings, were $40,000. Each party was each contributing to the household, for a total, gross household income of $90,000, with the [husband] contributing 56% of the household income. The [husband]’s contribution of $50,000 terminated upon his entering medical school. Even though the [husband] contributed some income to the household' expenses,' it was drastically reduced from the amount he contributed at the time that he left his job; however, the household expenses and cost of living did not reduce.
“3. The Court finds that the [husband] financed the cost of his medical school and living expenses through student loans and scholarships from the Rural Health Foundation, totaling over $120,000.00. The [husband] currently has outstanding debt owed on student loans in the amount of $181,005.05, which he is paying back at the rate of $1,174.00 per month.'
“4. The Court finds from the evidence, at the .time of the marriage, the [wife] had a college degree[] and was working as a teacher > in the Monroe County School System. The [husband] was still in school, in the process, of finishing his. degree in engineering. The [husband] finally graduated and obtained employment as an engineer with Honeywell. The [husband] worked out of the home. The parties lived and resided in Monroe County,-Alabama.
‘⅜. The Court finds from the evidence; 'after several years as an engineer, the [husband] decided to return to school and pursue a medical degree, which he has successfully completed and is currently working in Monroe County as' a medical doctor.
“6. The Court finds from the evidence, the [wife] continued to work outside the home in her field as an educator in Monroe County,. Alabama, and through her hard work she -rose to the level of Assistant Principal at the Excel Elementary School in Monroe County, Alabama, where she , is currently employed.
“7. The Court further finds from the evidence, the parties had one child at the time, the [husband] chose to leave his career as an engineer and attend medical school,- Two more children were born to the parties while he was in medical school. All three children resided in the marital home with the [wife] while the [husband] attended medical school and did his residency over a period of seven and a half years.
“8. The' Court further finds from the evidence, the employment income of the [wife] during said seven and a half years was used to support the [wife], the minor children and the expenses of operating a household. The Court further finds the [husband] had income he received from student loans and scholarships through the Rural Health [Foundation,] [w]hich paid for his education and maintained the [husband].
“9.- The Court further finds from the evidence, there is a dispute between the *1116 parties as to whether or not the [husband] contributed to the household ¡expenses during the. four years of medical school and the three and a half years of residency: Further, there is a dispute as to the amount of income contributed by .the [husband] to the household expenses during his four years of medical school and three years of residency.
“10, The Court further finds from the evidence, the documentation, the testimony of the [wife], the testimony of the [husband]’s mother, and the testimony of the wife’s father, the majority of the burden'of the household and maintaining the marital home, fell to the [wife] during the seven and a half years of medical school and residency.
“11. The Court finds that the burden of raising the children during the seven and a half years of medical school and residency fell to the [wife] based upon the testimony presented at court.
“12. The Court finds from the evidence, the breakdown in the marital relationship occurred during the period of time the [husband] was in medical school and doing his residency and was brought on by the-stress on both parties of maintaining .a home, pursuing a successful completion of medical school and residency, and rearing three children.. As a result of. the combination of these things, the parties reached a point where their relationship was irreconcilable and they became incompatible.
“13. The Court finds from the evidence, the parties received a gift of real estate from the [wife’s] parents whereupon they built the marital home which they resided in up until the parties separated on July 1, 2012. The Court finds from the' ’[husband]’s testimony' he claims no interest in the marital home and is willing for the [wife] to receive the marital home and land upon which it is located. There is a debt owed on the martial home and the Court further finds the' [wife] paid- the monthly mortgage payments on the marital home during the seven and a half years the [husband] was in medical school and residency.
“14. The testimony and documents presented at Court support the [wife]’s contention, the [husband] credited- her actions as allowing him to pursue his medical education and career. The Court finds this to .be true from the testimony offered, as well as the newspaper article presented by the [wife] which directly quotes the [husband], which the [husband] did not deny.
“15. The Court -further finds from the evidence, the' [husband]’s income increased in August when he became employed as a physician....
“16. The Court finds from the evidence, the [husband] was able to pursue his medical degree and career. Based on [the wife]’s sacrifices, it has enabled him to obtain employment at a much higher rate- of income than he previously had and the potential for that income to increase is infinite.”
Regarding the assets of the parties, the trial court ordered the following division:
“26. The [wife] is awarded all right, title and interest in and to the marital home and the real estate‘upon which it is located. The [wife] is further ordered to assume the indebtedness owed thereon and indemnify arid hold the [husband] harmless therefrom....
“27. The [wife] is awarded all right, title and interest in and to the contents of the marital home.
“28. Each party is- awarded all right, title and interest in and to the automobile which he or she has possession of, and if any indebtedness is owed thereon, the párty receiving said vehicle shall assume the said indebtedness and shall *1117 indemnify and hold the other party-harmless therefrom. ■
“29. The Court awards alimony in gross to the [wife] in the amount of $120,000.00. Said amount to be paid to her in ten annual installments, of Twelve Thousand ($12,000.00) dollars, with the first installment due and payable on September 1, 2014, which is the anniversary of his employment as a medical doctor, with the last payment being due and payable on. September 1,2024,”
In addition, the trial court ordered the parties to maintain their term-life insurance policies with the children named as irrevocable beneficiaries. The judgment did not divide or reallocate the parties’ whole-life insurance policies, the wife’s retirement accounts, or the wife’s student-loan and credit-card debt.
On April 4, 2014, the husband filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., seeking to alter, amend, or vacate the judgment or asking the trial court to “hold- a new trial or hear additional evidence,” Among other arguments, the husband argued that the. award of alimony in gross in the amount of $120,000 was inequitable given the financial circumstances of the parties and that he had agreed to give up any interest in the marital home to the wife in lieu of any additional financial obligations to her. The husband requested a hearing on the motion; however, on April 22, 2014, the trial court entered an order denying the husband’s postjudgment motion without holding a hearing. On May 9, 2014, the husband filed a timely notice of appeal with this court. On May 22, 2014, the wife filed a timely cross-appeal. See Rule 4(a), Ala. R.App. P.

Standard of Review

“In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact' based on oral testimony, we are governed by the ore tenus-rule, Undór-this rule, the trial court’s judgment based on those findings will be presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App.1993). This presumption of correctness is based on the trial court’s unique position to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). Additionally, matters of alimony and property division rest soundly within the trial court’s discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be-considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995).”
Zinnerman v. Zinnerman, 803 So.2d 569, 572 (Ala.Civ.App.2001).

Discussion

“Generally, when a party requests a hearing on a postjudgment motion [filed pursuant to Rule 69], the court must grant that request.” Mobile Cnty. Dep’t of Human Res. v. C.S., 89 So.3d 780, 784 (Ala.Civ.App.2012). Rule 59(g), Ala. R. Civ. P., provides that a postjudgment motion “shall not be ruled upon until the parties have had opportunity to be heard thereon.” We have also held that,
“[a]though it is error for the trial court not to grant such a hearing, this -error is not necessarily reversible error. For example, if an appellate court determines that there was no probable merit to the motion, it - may affirm based on the harmless-error rule. See Rule 45, Ala. R.App. P.; and Kitchens v. Maye, *1118 623 So.2d 1082, 1088 (Ala.1993) (‘failure to grant a hearing on a motion for new trial pursuant to Rule 59(g) is reversible error only if it “probably injuriously affected substantial rights of the parties” ’).”
Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala.2000).
“ ‘ “Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.” ’ ”
DWOC, LLC v. TRX Alliance, Inc., 99 So.3d 1233, 1236 (Ala.Civ.App.2012) (quoting Kitchens v. Maye, 623 So.2d 1082, 1088-89 (Ala.1993), quoting in turn Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989)).
In his postjudgment motion, the husband argued that the award of alimony in gross was not supported by the parties’ financial conditions established by the evidence presented at the trial. “ ‘Alimony in gross’ is the present value' of the [recipient spouse’s] inchoate marital rights-dower, homestead, quarantine, and distributive share.” Hager v. Hager, 293 Ala. 47, 55, 299 So.2d 743, 750 (1974). “Alimony in gross is considered ‘compensation for the [recipient spouse’s] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple’s jointly owned assets is not practicable.’” TenEyck v. TenEyck, 885 So.2d 146, 151 (Ala.Civ.App.2003) (quoting Hager, 293 Ala. at 54, 299 So.2d at 749). “It is payable out of the [payor spouse’s] present estate as it exists at the time of divorce.” Hager, 293 Ala. at 55, 299 So.2d at 750 (citing Borton v. Borton, 230 Ala. 630, 162 So. 529 (1935)).
The evidence presented to the trial court showed the husband’s primary assets to be his interest in the equity of the marital home, the $4,000 cash value of his whole life insurance policy, and his vehicle. The wife was awarded the equity in the marital home, and there was no equity in the husband’s vehicle. The trial court found that the husband had $181,005.05 in student-loan debt, and the husband testified to having a car-loan debt of $26,000. In sum, there was no evidence of an existing estate from which the husband could pay $120,000 in alimony in gross to the wife.
In her brief to this court, the wife submits that-the husband’s-.medical degree was a marital asset worth a substantial amount of money in future value. As noted by the husband, there is no evidence in the record to support that assertion, and the wife cites no cases in support of the assertion. Moreover, “alimony in gross is a form of property settlement,” TenEyck, 885 So.2d at 152 (citing Hager, 293 Ala. at 54, 299 So.2d at 749), and, under current law, “ ‘a professional degree acquired by one spouse is not considered a marital asset for purposes of property division.’ ” Lackey v. Lackey, 18 So.3d 393, 403 (Ala.Civ.App.2009) (quoting Pickett v. Pickett, 723 So.2d 71, 74 (Ala.Civ.App.1998) (plurality opinion), and citing Jones v. Jones, 454 So.2d 1006, 1009 (Ala.Civ.App.1984)). “[A]n award of alimony in gross must be made based on the valúe of the marital estate and the parties’ separate estates and not on the anticipated future earnings of the payor.” Ex parte Dickson, 29 So.3d 159, 162 (Ala.2009).
As such, the award of $120,000 in alimony in gross is unsupported by the evidence presented at trial. Accordingly, we.hold that the husband’s postjudgment mption had probable merit and .that the *1119 failure to conduct a hearing on the motion was reversible error.
In her cross-appeal, the wife contends for' the first time that the trial court erred in failing to award periodic alimony to her. As noted by the husband, the wife did not request that she be awarded periodic alimony by the trial court.
“It is well settled that an appellate court may not hold a trial court in error in regard to theories or issues not presented to that court. Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988); Boshell v. Keith, 418 So.2d 89 (Ala.1982). An issue may not be raised for the first time on appeal. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992).”
Allsopp v. Bolding, 86 So.3d 952, 962-63 (Ala.2011). Further, the wife does not argue that the issue was tried by the express or implied consent of the parties, nor would the record support such an assertion. See, e.g., Lacy v. Lacy, 403 So.2d 251 (Ala.Civ.App.1981) (holding that the issue whether to award alimony in gross could be tried by express or implied consent). We note that, at trial, the. wife’s counsel asked the husband:
“Now, you are aware, are you not, that [the wife] is asking for compensation in the form of a property settlement, alimony, gross for the period of time that she and those children survived off of her income and whatever you contributed from the middle of 2006 to the point in time that you finished school?”
The wife .does not argue that the trial court erred in failing to reserve the issue of periodic alimony, does not cite any authority in support of her request — asserted for the first time on appeal — for periodic alimony, and does not cite any evidence in the record from which an award of periodic alimony could be based. '
“It is the appellant’s burden to refer [an appellate court] to legal authority that supports its argument. Rule 28(a)(10), Ala. R.App. P., requires that the argument'in an appellant’s brief include ‘citations to the cases, statutes, [and] other authorities ... relied on.’ Consistent with Rule 28, ‘[w]e have stated that it is not the function' of [an appellate] court to do a party’s legal research.’ Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992) (citing Henderson v. Alabama A & M University, 483 So.2d 392, 392 (Ala.1986) (‘ “Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.” Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984).’)).”
Board of Water & Sewer Comm’rs of the City of Mobile v. Bill Harbert Constr. Co., 27 So.3d 1223, 1254 (Ala.2009). There is no reversible error presented in this record regarding the failure to award periodic alimony, and, therefore, there is no basis to reverse the judgment based on the issue raised in the wife’s cross-appeal.
We also note that the wife’s alternative argument in support of the $120,000 award to her is that the trial court mislabeled the alimony award as “alimony in gross” rather than “periodic alimony.” There are no facts or legal authority, presented to support her assertion. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (“This court will address' only those issues properly presented and for which supporting authority has been cited.”), and White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”). Furthermore, the wife failed-to present this argument to the-trial court. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider argu *1120 ments raised for the first time on -appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). Therefóre, this argument cannot form a basis to support the $120,000 award.
Because we find the husband’s argument that the award of alimony in gross was unsupported by the evidence to be meritorious, we reverse the order denying the husband’s postjudgment motion. We affirm the divorce judgment insofar as it did not contain an award of periodic alimony to the wife. We rernand the cause to the trial court to conduct a hearing on the husband’s postjudgment motion and for further proceedings consistent with this opinion. '
APPEAL — REVERSED ÁND REMANDED WITH INSTRUCTIONS,
CROSS-APPEAL — AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.