THOMAS, Judge.
 

 Robert Jeffrey Redden (“the husband”) and Marnie Lane Redden (“the wife”) were married in June 1988. They have two children. The parties separated in April 2006, and the husband sued the wife for a divorce on the grounds of incompatibility and irretrievable breakdown of the marriage in November 2006. The wife answered and counterclaimed for a divorce.
 
 [1]
 

 After a trial on January 9, 2008, the trial court entered a judgment divorcing the parties on the grounds of incompatibility and irretrievable breakdown of the marriage; however, in its judgment, the trial court stated that the husband’s infidelity was a primary contributing factor to the breakdown of the marriage and that it would consider the husband’s “actions, the length of the marriage, and [the husband’s] lifestyle” in making its property division. Among other things, the judgment awarded the wife custody of the parties’ minor child and ordered the husband to pay $610 per month in child support. The judgment further ordered the husband to pay the wife $1,378 per month in alimony until the marital residence is sold; to pay $25,000 as alimony in gross to the wife after the sale of the residence, which may be paid in installments of $750 per month; and to pay $5,000 to the wife for her to use to pay her attorney fees.
 

 The husband appeals. He argues that the trial court’s award of periodic alimony, alimony in gross, and attorney fees should be reversed. The husband also argues that the trial court’s finding that his infidelity was the primary cause of the breakdown of the marriage is unsupported by the evidence.
 

 The trial court has wide discretion over the issues of alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties’ property.
 
 Grimsley v. Grimsley,
 
 545 So.2d 75, 77 (Ala.Civ.App.1989). The only limitation on that discretion is that the division of property must be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court.
 
 Ross v. Ross,
 
 447 So.2d 812 (Ala.Civ.App.1984). The trial court’s judgment as to those issues is presumed correct and will not be reversed unless it is so unsupported by the evidence so as to be unjust and palpably wrong.
 
 Grimsley,
 
 545 So.2d at 76. “The trial court has no rigid
 
 *511
 
 standards on which to base the determination of alimony and division of property. J
 
 ones v. Jones,
 
 560 So.2d 1092, 1093 (Ala.Civ.App.1990). In making the property division, the trial court may consider several factors, including the parties’ respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property.
 
 Lutz v. Lutz,
 
 485 So.2d 1174 (Ala.Civ.App.1986). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court,
 
 Albertson v. Albertson,
 
 678 So.2d 118, 120 (Ala.Civ.App.1995), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed.
 
 Murphy v. Murphy,
 
 624 So.2d 620, 623 (Ala.Civ.App.1993).
 

 The husband is employed by Newman Industrial Supply Company and has been for the past 3 years; his annual salary is approximately $54,000. He has a high-school education. He is paid twice per month, and his take home pay per month, according to his testimony, is $3,200. The wife has a bachelor’s degree in business administration and a master’s degree in management. She is employed by MOBIS Alabama, LLC, as a procurement specialist earning $45,000 per year, or $3,747 in gross income per month.
 

 The record reveals that the husband has been living with a woman he met in July 2006, after the parties separated. The husband denied having known this woman before the parties separated, and the wife presented no evidence to the contrary, although she indicated that she might have heard of a relationship the husband had in the past, when the parties separated the first time in 2005. The husband’s counsel objected to the wife’s testimony when her answer revealed that the wife had no personal knowledge of the affair, and the wife’s counsel reworded his question to ask the wife about adultery of which she had personal knowledge. The husband indicated in his testimony that the parties’ separation was precipitated by what he perceived as their “going separate directions” and financial difficulties that included a bankruptcy in 2003.
 

 The wife complained that the husband had pursued expensive hobbies like hunting and fishing during the marriage. She said that she had not participated in those hobbies other than a few times during the early part of the marriage. The husband’s testimony indicated that the parties’ minor child had participated in fishing trips with the husband. Although she complained that the husband’s spending on those hobbies was a problem, the wife presented no evidence of the amounts the husband spent or of the value of any of the husband’s fishing or hunting equipment.
 

 The wife further complained that the husband had purchased a total of four motorcycles over the course of the marriage. The husband said that he had purchased three motorcycles at one time and that he had sold those motorcycles at a loss. He mentioned that he had purchased the other motorcycle at a different time. The wife also complained that the husband had purchased pickup trucks several times during the marriage. Presumably, the wife was concerned that the husband’s purchases had led to some of the financial troubles the parties had faced in the years preceding the divorce.
 

 The husband testified that he currently owned two boats, both of which were not operational at the time of trial. Based on his testimony, the boats were worth between $2,500 and $4,000, depending on whether he could get them into working condition. In its judgment, the trial court
 
 *512
 
 urged the husband to sell the boats to pay off debts. The husband was also awarded his personal property, which included tools, guns, and other hunting and fishing implements. The value of those items was not disclosed in the record.
 

 Since the separation, the husband has paid the wife support for her and their two children; their older child is now emancipated by agreement of the parties. At first, the husband paid the wife $2,300 per month. In October 2007, however, at the husband’s request, the trial court lowered his pendente lite obligation to $2,000 per month. The parties’ older child, who was 18 years old at the time of trial, then came to live with the husband. The husband unilaterally lowered his pendente lite support obligation, but he was later ordered by the trial court to pay to the wife the amounts he had failed to pay.
 

 The record indicates that the parties have one major asset: the marital residence. The marital residence had been listed for sale for 18 months at the time of trial. It had most recently been listed at a price of $264,000. The residence was encumbered by three mortgages; the sum of the three monthly mortgage payments was $2,180.
 

 The wife testified regarding some of her expenses other than the mortgage payments. She said that she spent $500 per month on food and other necessary personal-care items, $108 per month on after-school care for the parties’ minor child, $455 per month on her vehicle payment, $400 per month on gasoline and vehicle maintenance, and $196 per month on cable and Internet services. The total amount of her expenses, including some that were not explicitly stated in the record, was said to be $2,691.
 

 The parties also had several credit cards, all of which had balances at the time of trial. In addition, the wife had expended money on repairs to the air conditioner for the marital residence and on repairs to the older child’s vehicle. The husband was ordered to pay to the wife $5,450 toward the credit-card debts and for his share of the repair expenses.
 

 At trial, the wife requested that $25,000 in alimony in gross be awarded to her. When asked by the husband’s counsel from where the $25,000 was to come, the wife testified that the husband could make payments. She further explained that she did not expect the alimony-in-gross award to be paid until the marital residence sold, and, she said, the alimony-in-gross award could be paid out of the equity in the house “if there is any equity.”
 

 The husband argues that the trial court erred in finding that his infidelity was a primary contributor to the breakdown of the parties’ marriage. We note that the trial court did not divorce the parties on the ground of adultery, but it did clearly indicate that it would consider the husband’s conduct in making its property division and alimony award. Nothing in the record supports a conclusion that the husband was unfaithful to the wife before the parties separated in March 2006. Thus, we agree with the husband that the trial court’s factual finding that infidelity on his part precipitated the demise of the marriage is plainly and palpably wrong.
 
 See Ragan v. Ragan,
 
 655 So.2d 1016, 1018 (Ala.Civ.App.1995)
 

 The husband next argues that the trial court erred in awarding the wife $25,000 as alimony in gross and $1,378 per month in periodic alimony until the sale of the marital residence. The husband argues that the awards are inequitable. He further argues that the alimony-in-gross award is wholly unsupportable because the husband owns, and was awarded, no assets from which to pay the alimony-in-gross award.
 

 
 *513
 
 As noted above, the parties had only one major asset, the marital residence, which the parties intended to sell. The highest list price of the marital residence was $264,000; however, the parties had not had one offer on the house for the 18-month period it had been on the market. The mortgages on the marital residence total $235,000. As the wife tacitly admitted, the likelihood of recovering any equity upon the sale of the home is remote at best.
 

 “Alimony in gross is considered ‘compensation for the [recipient spouse’s] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple’s jointly owned assets is not practicable.’
 
 [Hager v.] Hager,
 
 293 Ala. [47,] 54, 299 So.2d [743,] 749 [ (1974) ]. An alimony-in-gross award ‘must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested.’
 
 Cheek v. Cheek,
 
 500 So.2d 17, 18 (Ala.Civ.App.1986). It must also be payable out of the present estate of the paying spouse as it exists at the time of the divorce.
 
 [Hager v.] Hager,
 
 293 Ala. at 55, 299 So.2d at 750. In other words, alimony in gross is a form of property settlement.
 
 [Hager v.] Hager,
 
 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award is generally not modifiable.
 
 Id.”
 

 TenEyck v. TenEyck,
 
 885 So.2d 146, 151—52 (Ala.Civ.App.2003);
 
 see also Ex parte Dickson,
 
 29 So.3d 159, 163 (Ala.2009) (relying on
 
 Hager v. Hager,
 
 293 Ala. 47, 54, 299 So.2d 743, 749 (1974), to reverse this court’s judgment affirming a trial court’s award of alimony in gross that “exceeded the value of the husband’s estate at the time of the divorce”).
 

 As the husband points out, unless the marital residence sells and the parties realize that much equity from the sale, which appears unlikely, he has no assets with which to pay a $25,000 alimony-in-gross award. Thus, the trial court’s award runs afoul of the requirement that alimony in gross “be payable out of the present estate of the paying spouse as it exists at the time of the divorce.”
 
 Id.
 
 We must therefore reverse the trial court’s award of $25,000 in alimony in gross to the wife.
 

 The trial court’s judgment, insofar as it requires the husband to pay the wife $1,378 per month as periodic alimony until the sale of the marital residence does not appear so inequitable in and of itself that reversal would be required.
 
 See, generally, Holman v. Holman,
 
 435 So.2d 98, 100-01 (Ala.Civ.App.1983) (discussing a similar provision and characterizing it as being in the nature of periodic alimony). However, because property-division and alimony awards are considered to be interrelated, we often reverse both aspects of the trial court’s judgment so that it may consider the entire award again upon remand.
 
 See Chambers v. Chambers,
 
 823 So.2d 709, 716 (Ala.Civ.App.2001) (“We also reverse the judgment as to the alimony issue, so that the trial court will, on remand, have before it all matters concerning payments between the parties.”). Therefore, we reverse the judgment insofar as it orders the husband to pay $1,378 per month in periodic alimony, and we remand the cause to the trial court for the trial court to reconsider the property division and alimony award without regard to the post-separation infidelity of the husband and considering the requirements of an award of alimony in gross.
 
 See Langham v. Langham,
 
 753 So.2d 527, 530 (Ala.Civ.App.1999) (reversing a property division and alimony award when this court reversed a determination that the husband had committed adultery because we could not tell if the trial court had based its division of proper
 
 *514
 
 ty on the finding of adultery or other conduct of the husband).
 

 The husband further appeals the award of $5,000 to the wife for her attorney fees. Typically, an award of attorney fees in a divorce case is a matter of the trial court’s discretion.
 

 “Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed.
 
 Thompson v. Thompson,
 
 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include
 
 the financial circumstances of the parties, the parties’ conduct,
 
 the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’
 
 Figures v. Figures,
 
 624 So.2d 188, 191 (Ala.Civ.App.1993).”
 

 Glover v. Glover,
 
 678 So.2d 174, 176 (Ala.Civ.App.1996) (emphasis added). The husband argues that, considering the relatively equal incomes of the parties, the wife is able to pay her own attorney fee. He further argues that the award of an attorney fee to the wife is a punishment based on the trial court’s stated use of the husband’s infidelity as a basis for making its division of property. Because we have reversed the trial court’s award of alimony in gross and its periodic-alimony award, and because we have determined that no evidence supports a determination that the breakdown of the marriage was precipitated by any infidelity on the part of the husband, we reverse the trial court’s award of an attorney fee and remand the cause to the trial court for it to reconsider its award without regard to the husband’s post-separation infidelity.
 

 The wife’s request for an attorney fee on appeal is denied.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 THOMPSON, P.J., concurs in the result, without writing.
 

 [1]
 

 . The wife’s answer and counterclaim are not contained
 
 in
 
 the record on appeal.