PITTMAN, Judge.
David Call (“the husband”) appeals from a judgment divorcing him and Danielle Call (“the wife”). We affirm in part, reverse in part, and remand.
The parties, who are both in their early forties, married in 1994 and have four children (“the children”), who were born in 2000, 2003, 2005, and 2007. The husband is a physician and is board certified as a hospitalist.[1] He is presently employed at St. Vincent’s Hospital, and his base compensation is $265,000 per year. The wife was employed as the manager of a retail store until the birth of the parties’ first child in 2000; since 2000, by mutual agreement of the parties, she has been a stay-at-home mother.
In April 2010, the parties separated, and the husband sued the wife for a divorce, seeking an equitable division of the parties’ property. The wife filed an answer and counterclaim, seeking a divorce, primary physical custody of the children, child support, alimony, and an equitable division of the parties’ property. Upon the motion of the wife, the trial court appointed a guardian ad litem for the children. The wife filed a motion seeking the entry of a pen-dente lite order regarding custody, visitation, child support, possession of the parties’ house, and alimony. That motion was heard in August 2010 when the husband was employed as a hospitalist at DCH Northport Hospital (“Northport Hospital”) and was moonlighting as a hospitalist for another health-care entity. At the hearing, the parties informed the trial court that they had reached an agreement regarding the terms of the pendente lite order, recited the terms of the agreement on the record, and confirmed that those terms constituted their agreement. The *257 trial court subsequently entered a written order (“the pendente lite order”) based on that agreement. The provisions of the pendente lite order that are pertinent to this appeal (1) awarded the wife primary physical custody of the children; (2) ordered the parties not to allow the children to be in the presence of three individuals, one of whom was then, and is now, the husband’s girlfriend (“the girlfriend”); and (3) stated: “The [husband] shall continue to deposit his check from Northport Hospital, or an equivalent amount, in the parties’ joint checking account as family support, as was the normal custom during the marriage.” The husband testified at the trial of this action that, when the pendente lite order was entered, the net amount of his paycheck from Northport Hospital was approximately $5,200 and that he received such a paycheck every two weeks.
Thereafter, the wife filed several contempt petitions alleging that the husband had violated the provision of the pendente lite order requiring him to pay family support and that an arrearage had accumulated. The husband filed written responses to those petitions. In January 2011, the trial court held a hearing regarding, among other things, the wife’s contempt petitions. The trial court ordered the husband to pay the wife $15,000 to satisfy the family-support arrearage that had accumulated up until then, and the husband paid the wife $15,000. Thereafter, the wife filed several more contempt petitions alleging that the husband had violated the provision of the pendente lite order requiring him to pay family support and that an arrearage had accumulated. The husband filed written responses to those petitions. In September 2011, the trial court held a hearing regarding those contempt petitions. The order entered after that hearing recited that an agreement had been reached by the parties regarding the contempt issues, that the agreement had been read into the record, and that the agreement had been confirmed by the parties. Based on the parties’ agreement, the order provided, in pertinent part:
“1. The [husband] acknowledges that he is in contempt of the Court’s prior order requiring him to pay family support to the [wife].
“2. The [husband] shall pay to the [wife] the sum of Ten Thousand Dollars ($10,000,00) prior to leaving court on September 21, 2011, said payment to be made in the form of a post-dated check, dated Friday, September 23, 2011. Said funds ($10,000.00) shall be ‘good’ and accessible by the [wife] on Friday, September 23, 2011. Said $10,000.00 payment represents a payment/credit toward the [husband’s] current support arrearage which the [wife] has alleged is approximately Sixty-Six Thousand Dollars ($66,000.00). However, the exact amount of said arrearage shall be determined by the Court at final hearing.
“3. Beginning Friday, October 7, 2011, and every other Friday thereafter, the [husband] shall pay directly to the [wife the] sum of Six Thousand Nine Hundred Twenty-Three Dollars and Seven Cents ($6,923.07). Said payments shall be made in ‘good funds’, i.e., accessible to the [wife] on each said every other Friday.
“4. The aforementioned bi-weekly payments to the [wife] represent a monthly support payment of Fifteen Thousand Dollars ($15,000.00), effective September 23, 2011, broken down as follows: Eleven Thousand One Hundred Ninety-Seven Dollars and Forty-Two Cents ($11,197.42) current support, and Three Thousand Eight Hundred Two Dollars and Fifty-Eight Cents ($3,802.58) towards the [husband’s] ar-rearage.
*258 “5. In the event that any payment required herein is late, is not made, is not made in full, and/or is not made in good funds, the [wife] shall execute an Affidavit stating such which shall be filed with the Court. A writ for the [husband’s] arrest shall immediately be issued, and the [husband] shall be incarcerated until a subsequent hearing to determine any additional sanctions. The [husband] and his attorney acknowledged in court that a contempt does exist and that his failure to pay as ordered from the hearing date until final hearing would result in a writ being issued for the [husband’s] arrest.
“6. The [wife] has not waived any claims against the [husband] for contempt for said support non-payment; the same ... will be heard at final hearing.”
The action was tried ore tenus during three days in January 2012. After the first two days of trial, the trial court entered an order reciting that the parties had reached a temporary agreement regarding the husband’s payment of family support. Based on that agreement, the order provided, in pertinent part:
“2. By agreement of the parties, beginning with the first bi-weekly payment [of family support] following the entry of this Order, which should be the January 13, 2012 payment, the [husband] shall pay the [wife] the sum of $5,168.04 on a bi-weekly basis ($11,197.42 per month) for the current family support payment. The payment of $8,802.58 per month on the alleged arrearage is hereby suspended pending the Final Hearing.
[[Image here]]
“4. This Temporary Agreed Order shall not be considered a modification of the current support payment nor shall this Order constitute a waiver of any of the alleged arrears.
“The actual arrearage remains disputed and shall be determined and calculated by the Court as part of its ruling at the conclusion of the case.”
Upon the conclusion of the trial, the trial court entered a final judgment in February 2012. The provisions of the judgment pertinent to this appeal awarded the wife primary physical custody of the children; found that the parties’ gross income exceeded the uppermost level of the child-support schedule appended to Rule 32, Ala. R. Admin. P. (“the Rule 32 schedule”); ordered the husband to pay child support in the amount of $5,000 per month; awarded the wife alimony in gross in the amount of $35,000, to be paid in installments of $5,000 per year for 7 years; ordered the husband to pay periodic alimony in the amount of $3,000 per month; awarded the husband the parties’ 2010 Mercedes automobile, one-half of his retirement account, a debt receivable, and the other personal property in his possession; ordered the husband to pay a debt he owed for student loans and a debt he owed the Internal Revenue Service for unpaid income taxes; found that the husband owed a family-support arrearage in the amount of $49,390.08 and accrued interest thereon in the amount of $3,571.76; ordered the husband to pay the family-support arrearage and accrued interest at the rate of $1,000 per month; found the husband in contempt for willfully failing to pay family support for 4 months; sentenced the husband to 5 days in jail for each of the 4 months he had willfully failed to pay the family support; suspended his sentence pending his compliance with the judgment; and ordered the parties not to allow the children to be in the presence of the girlfriend.
On the eighth day after the entry of the judgment, the husband filed a notice of appeal. On the 29th day after the entry of *259 the judgment, the wife filed a motion to revoke the suspension of the husband’s jail sentence, alleging that he had failed to comply with the provisions of the judgment requiring him to pay child support, periodic alimony, and the family-support arrearage. On the 30th day after the entry of the judgment, the wife filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the judgment in which she requested relief that is not pertinent to this appeal. The filing of the "wife’s Rule 59(e) motion caused the husband’s notice of appeal to be held in abeyance until the disposition of that motion. See Rule 4(a)(5), Ala. R.App. P. While the wife’s motions were pending, the husband filed a motion to stay the judgment pending the resolution of his appeal, which the trial court denied.
Within 90 days after the filing of the wife’s Rule 59(e) motion, the trial court held a hearing regarding the wife’s motion to revoke the suspension of the husband’s jail sentence for contempt and her Rule 59(e) motion. Also within 90 days after the filing of the wife’s Rule 59(e) motion, the trial court entered two written orders. The first order revoked the suspension of the husband’s jail sentence and ordered him incarcerated for 20 days. The second order granted the wife’s Rule 59(e) motion in part and denied it in part. Upon the disposition of the wife’s Rule 59(e) motion, the husband’s notice of appeal became effective. Id.
Thereafter, the husband filed an emergency motion asking this court to issue a writ of mandamus directing the trial court to order the husband’s release from jail, which this court denied. The husband then filed a motion seeking the same relief from the supreme court. The supreme court treated the husband’s motion as a motion for a stay of execution of the judgment of contempt and of the order revoking the suspension of the husband’s jail sentence and granted that stay.
The husband first argues that the trial court improperly exercised its discretion in awarding the wife alimony in gross in the amount of $35,000 because, he says, that award violates the principle that an award of alimony in gross must be payable out of the present estate of the paying spouse as it exists at the time of the divorce. Specifically, the husband argues that the divorce judgment made him responsible for paying the debt he owes for student loans and the debt he owes the Internal Revenue Service for unpaid income taxes and that the aggregate amount of those debts far exceeds the value of the property he was awarded in the judgment.
In Ex parte Dickson, 29 So.3d 159, 162-63 (Ala.2009), the supreme court stated:
“In [Ex parte] Hager, [293 Ala. 47, 299 So.2d 743 (1974),] this Court defined alimony in gross and periodic alimony as follows:
“ ‘ “Alimony in gross” is the present value of the wife’s inchoate marital rights — dower, homestead, quarantine, and distributive share. It is payable out of the husband’s present estate as it exists at the time of divorce. Borton v. Borton, [230 Ala. 630, 162 So. 529 (1935).] On the other hand, “periodic alimony” is an allowance for the future support of the wife payable from the current earnings of the husband.’
“293 Ala. at 55, 299 So.2d at 750 (emphasis added). The Hager Court also stated that the award at issue “was intended to be, as denominated, “alimony in gross,” a property settlement award, compensating the wife only for the loss of her rights in the husband’s estate.’ 293 Ala. at 55, 299 So.2d at 751 (emphasis added). See also Daniel v. Daniel, 841 So.2d 1246, 1250 (Ala.Civ.App.2002) *260 (alimony in gross is a form of property settlement and must be payable out of the present estate of the payor at the time of the divorce).”
(Footnote omitted.)
In the present case, the husband testified at trial that he owed approximately $80,000 to $90,000 on his student loans, and that testimony was undisputed. In addition, the husband testified at trial that he owed the Internal Revenue Service approximately $150,000 to $160,000 for unpaid income taxes, and that testimony was also undisputed. On the other hand, the evidence indicated that the 2010 Mercedes automobile awarded the husband in the judgment had a maximum value of approximately $60,000, that the share of the husband’s retirement account awarded him in the judgment had a value of approximately $12,500, and that the value of the debt receivable awarded the husband in the judgment had a value of approximately $30,000. The record does not contain any evidence regarding the value of the other items of personal property awarded the husband in the judgment. Thus, the evidence in the record indicates that the husband’s liabilities for debts, which totaled approximately $230,000 to $250,000, far exceeded the total value of the property awarded him in the judgment, which was approximately $102,500. Accordingly, we conclude that the trial court improperly exercised its discretion in awarding the wife alimony in gross in the amount of $35,000 because the husband’s estate at the time of the divorce was insufficient to pay that award. See Dickson, supra. Because an award of alimony in gross is considered to be a part of the division of property, see Dickson, supra, we must reverse the trial court’s judgment with respect to the entire division of property. Moreover, “because property-division and alimony awards are considered to be interrelated, we often reverse both aspects of the trial court’s judgment so that [the trial court] may consider the entire award again upon remand.” Redden v. Redden, 44 So.3d 508, 513 (Ala.Civ.App.2009). Accordingly, because we must reverse the trial court’s judgment with respect to the property division, we also reverse the trial court’s judgment with respect to the award of periodic alimony so that the trial court can consider both the division of property and the award of periodic alimony again on remand. See Redden, supra.
The husband also argues that the trial court improperly exercised its discretion in ordering him to pay child support in the amount of $5,000 per month. It is undisputed that the husband’s gross monthly income of approximately $22,000 exceeds the uppermost limit of the Rule 32 schedule.
“ ‘When the parties’ combined income exceeds the uppermost limit of the child-support schedule, the determination of a child-support obligation is within the trial court’s discretion. Floyd v. Abercrombie, 816 So.2d 1051, 1057 (Ala.Civ.App.2001); Dyas v. Dyas, 683 So.2d 971 (Ala.Civ.App.1995). “[A] trial court’s discretion is not unbridled and ... the amount of child support awarded must relate to the reasonable and necessary needs of the children as well as to the ability of the obligor to pay for those needs.” Dyas v. Dyas, 683 So.2d at 973.
“ ‘ “When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor’s ability to pay for *261 those needs. [Anonymous v. Anonymous, 617 So.2d 694, 697 (Ala.Civ.App.1993) ]. To avoid a finding of an abuse of discretion on appeal, a trial court’s judgment of child support must satisfy both prongs.”
“ ‘Dyas v. Dyas, 683 So.2d at 973-74 (footnote omitted).’ ”
Wright v. Wright, 19 So.3d 901, 906-07 (Ala.Civ.App.2009) (quoting McGowin v. McGowin, 991 So.2d 735, 741 (Ala.Civ.App.2008)).
Although the husband argues that the award of child support in the amount of $5,000 per month constitutes an award of a “disproportionate” amount of his income, he does not argue that he is financially unable to pay $5,000 per month in child support. Therefore, we conclude that the award of child support in the amount of $5,000 a month reasonably relates to the husband’s ability to pay. See Wright, supra.
With regard to the issue whether the award of child support in the amount of $5,000 is rationally related to the reasonable and necessary needs of the children, taking into account the lifestyle to which the children were accustomed and the standard of living the children enjoyed before the divorce, the evidence before the trial court included the wife’s testimony providing an itemized estimate of the living expenses for herself and the children that totaled $6,630 per month, an amount that did not include such things as Christmas presents for the children; birthday parties for the children; birthday gifts for the children’s friends; field trips; and annual vacations and trips to visit the children’s grandparents in Ohio, which the wife testified the family had taken during the marriage.
In Tompkins v. Tompkins, 843 So.2d 759 (Ala.Civ.App.2002), the parties’ gross monthly income exceeded the uppermost limit of the Rule 32 schedule, and the judgment of the trial court not only ordered the noncustodial parent to pay child support for one child in the amount of $2,500 per month but also ordered the noncustodial parent to pay the custodial parent a substantial amount of periodic alimony each month for 11 years.[2] On appeal to this court, the noncustodial parent argued, among other things, that the award of child support in the amount of $2,500 per month was not rationally related to the reasonable and necessary needs of the child. Rejecting that argument, this court stated:
“The record reflects that at the time of trial the parties’ child was nine years of age and participated in several extracurricular activities, including horseback riding, gymnastics, and dance lessons. She has enjoyed the use of her parents’ two vacation homes in Florida. The record reflects that the child has had the benefit of a somewhat privileged lifestyle. The wife testified that she was considering enrolling the child in private school if she and the child moved to Montgomery. The wife provided an itemized estimate of living expenses for herself and the child that totaled $11,570 per month. Given the standard of living the child enjoyed before the divorce, the wife testified that she needed $3,000 per month for the child’s support.
“Under the ore tenus rule, the trial court’s judgment is presumed correct *262 and this court will not reverse the judgment absent a showing that the trial court’s findings are plainly and palpably wrong or that the trial court abused its discretion. See Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App.2000). While we might have made a different child-support award in this case, this court ‘may not substitute its judgment for that of the trial court.’ Id. Based upon a careful review of the entire record in this case, we cannot say that the trial court abused its discretion when it ordered the husband to pay $2,500 per month in child support.”
843 So.2d at 763-64.
In Wright, supra, the parties’ gross monthly income exceeded the uppermost level of the Rule 32 schedule, and the trial court not only ordered the noncustodial parent to pay the custodial parent child support for three children in the amount of $3,000 per month but also ordered him to pay the custodial parent periodic alimony in the amount of $2,000 per month. On appeal to this court, the noncustodial parent argued, among other things, that the award of child support in the amount of $3,000 per month was not rationally related to the reasonable and necessary needs of his three children. Rejecting that argument, this court stated:
“At trial, the [custodial parent] offered and the trial court admitted as the [custodial parent’s] Exhibit 4 a document itemizing her monthly expenses that [totaled $4,335]. She testified that Exhibit 4 represented a compilation of her actual living expenses for the two years since the parties’ separation.... The [custodial parent] testified that she was requesting $2,500 per month in child support.
[[Image here]]
“The [noncustodial parent] in this case did not take issue with any of the items on the [custodial parent’s] list of expenses. Although only three items on the list specifically relate to the children — $200 for preschool tuition for the youngest child, $200 for the expense of extracurricular activities, and $30 for school lunches — the trial court could reasonably have concluded that the [custodial parent’s] expenses reflected the actual cost of housing, food, and other necessities for the [custodial parent] and the three children, with no extravagance. The [noncustodial parent] readily acknowledged at trial that the family had enjoyed ‘an upper-middle-class lifestyle’ during the parties’ marriage. Accordingly, we conclude that the child-support award does ‘relate to the reasonable and necessary needs of the ehild[ren], taking into account the lifestyle to which the child[ren were] accustomed and the standard of living the children] enjoyed before the divorce,’ as well as the [noncustodial parent’s] ability to pay for those needs. Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App.1995).”
19 So.3d at 907.
In the present case, although only six of the items on the wife’s list of her and the children’s estimated monthly living expenses relate solely to the children — $600 for clothes and shoes, $140 for piano lessons, $120 for tennis lessons, $220 for baseball lessons, $300 for entertainment such as movies, and $250 for preschool tuition for the youngest child — “the trial court could reasonably have concluded that the wife’s expenses reflected the actual cost of housing, food, and other necessities for the wife and the [four] children, with no extravagance.” Id. “Accordingly, we conclude that the child-support award does ‘relate to the reasonable and necessary needs of the children], taking into account the lifestyle to which the child[ren were] accustomed and the standard of living the *263 children] enjoyed before the divorce.’ ” Id. (quoting Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App.1995)).
The husband next argues that the finding of contempt for his failure to pay family support as required by the penden-te lite order should be reversed because, he says, (1) the pendente lite order was not reasonably specific regarding the amount of the family support the husband was required to pay, (2) the judgment finding him in contempt did not indicate the conduct that was contemptuous with sufficient specificity, and (3) the wife failed to prove that he had the financial ability to pay the family support he had failed to pay. However, the record indicates that the husband never presented any of those arguments to the trial court either in his responses to the wife’s contempt petitions before the entry of the judgment finding him in contempt or in his response to the wife’s motion to revoke the suspension of his jail sentence after the entry of the divorce judgment. “[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [an appellate court’s] review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). Therefore, we cannot consider the husband’s arguments regarding the finding of contempt. Id.
Finally, the husband argues that the trial court improperly exercised its discretion in admitting into evidence a written psychological evaluation (“the evaluation”) regarding the girlfriend, which had been performed by a licensed psychologist in response to a court order in the girlfriend’s divorce action. However, even if the admission of that evidence was erroneous, it would not constitute reversible error unless its admission probably injuriously affected substantial rights of the husband. See Rule 45, Ala. R.App. P. Rule 45 provides:
“No judgment may be reversed or set aside ... in any civil ... case on the ground of ... the improper admission or rejection of evidence ... unless in the opinion of the court to which the appeal is taken ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
The only manner in which the husband contends that the admission of the evaluation may have injuriously affected his substantial rights is by possibly influencing the trial court to order the parties not to allow the children to be in the presence of the girlfriend. However, the husband has not argued on appeal that the trial court erred in ordering the parties not to allow the children to be in the presence of the girlfriend. “When an appellant fails to argue an issue in its brief, that issue is waived.” Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982). Because the husband has waived the issue whether the trial court erred in ordering the parties not to allow the children to be in the presence of the girlfriend and because he has not argued that the admission of the evaluation injuriously affected his substantial rights in any other manner, we conclude that any error the trial court may have committed in admitting the evaluation was harmless. See Rule 45.
In summary, we reverse the judgment of the trial court with respect to the division of property and the award of periodic alimony, we affirm the judgment in all other respects, and we remand the cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*264 THOMAS and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, with writing.
DONALDSON, J., recuses himself.

. The record indicates that a hospitalist is a physician who specializes in treating hospitalized patients of other physicians in order to minimize the number of hospital visits those other physicians must make.

. Specifically, the judgment ordered the noncustodial parent to pay the custodial parent periodic alimony in the following amounts: “$5,000 per month for 24 consecutive months following the divorce, $4,000 per month for each of the next 36 consecutive months, $3,000 per month for each of the next 36 consecutive months, and $2,000 per month for each of the next 36 consecutive months.” 843 So.2d at 761 n. 2.