PER CURIAM.
John F. Stender (“the former hpsband”) appeals from a judgment entered by the Madison Circuit Court (“the trial court”) in a postdivorce action brought by Tammy W. Sylvester Stender (“the former wife”). We affirm in part, reverse in part, and remand with instructions.
The parties, who have six children, divorced in 2012. Their firstborn child was no longer a minor when the judgment divorcing the parties (“the divorce judgment”) was entered; therefore, the divorce judgment made no provision for his custody. The divorce judgment awarded *963 the former husband primary physical custody of the parties’ second-born child and awarded the parties joint legal and physical custody of their third-born child (“the third-born child”), a girl bom in 1996, their fourth-born child (“the fourth-born child”), a girl bom in 2000, and their two youngest children (“the twins”), twin boys born in 2001 (the third-born child, the fourth-bom child, and the twins are here- ' inafter referred to collectively as “the four youngest children”). The other provisions of the divorce judgment pertinent to this appeal ordered the former husband to pay the former wife child support in the amount of $2,600 per month; ordered the former husband, within 30 days, to open a savings account (“the savings account”) for the benefit of the third-born child and deposit therein a $1,600 gift (“the $1,600 gift”) the third-born child had received from her paternal grandfather; ordered the former husband to assist the former wife in obtaining continuation health insurance under his employer’s group health-insurance plan pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1986 (“COBRA”); ordered the former husband to pay the former wife’s health-insurance premiums for 36 consecutive months following the entry of the divorce judgment; provided that “[t]he [former] [hjus-band' shall retain [a miniature ship made of ivory (‘the ivory ship’) ] conditioned upon his bequeathing the 'same to his children”; ordered the former husband to provide the former wife with proof that he had executed a will bequeathing the ivory ship to the parties’ children; ordered the former husband to pay the third-born child’s and the fourth-born-child’s private-school tuition; ordered the former wife to pay the twins’ private-school tuition; ordered each party to pay one-half of any medical and dental bills of the four youngest children that were not paid by insurance (“the out-of-pocket medical and dental expenses”); ordered each party to pay one-half of .the four youngest children’s extracurricular-activity expenses (“the extracurricular-activity expenses”); ordered the former husband to pay all the minor children’s automobile-insurance premiums until they became adults; and restrained each of the parties from harassing the other.
In July 2013, the former wife sued the former husband, seeking (1) primary physical custody of the four youngest children; (2) an increase in the amount of the former husband’s child-support obligation; (3) findings of contempt against the former husband based on, among other things, allegations that he had not complied with the provisions of the divorce judgment requiring him (i) to execute a will bequeathing the ivory ship to the parties’ children, (ii) to establish the savings account and deposit therein the $1,600 gift, (iii) to pay the former wife’s health-insurance premiums for 36 months, and (iv) to pay one-half of the out-of-pocket medical and dental expenses and one-half of the extracurricular-activity expenses; and (4) an attorney fee. The husband filed an answer and a counterclaim seeking a change in the parties’ custodial periods, a reduction in the amount of his child-support obligation, and findings of contempt against the former wife based on, among other things, an allegation that the former wife had harassed thp former husband at a bowling alley.
Thereafter, the trial court held a bench trial at which it received evidence ore ten-us. Upon the conclusion of the trial, the trial court orally stated that it found'that the former husband had not paid- the former wife’s health-insurance premiums for 18 of the 36 months he was required to pay them by the divorce judgment, found him in contempt for not paying those premiums, sentenced him to 5 days in jail for *964 each of the 18 payments he had not paid, and had him immediately arrested and incarcerated. The next day, the former husband filed a motion asking the trial court to split his 90-day sentence for failing to pay the former wife’s health-insurance premiums for 18 months and to suspend •the unserved portion of that sentence. As the ground of his motion, he asserted that earlier that day he had arranged for a certified check in the amount of $24,443.50 to be delivered to the former wife’s counsel and that that amount represented payment in'full for her health-insurance premiums for 36 months[1] plus reimbursement for health-related expenses she had incurred while she did not have health insurance during that 36-month period. The next day, the trial court held a hearing, released the former husband from jail, and suspended the remaining 88 days of the 90-day sentence, although it did not base its decision on' the former husband’s having paid the former wife $24,443.50.
In August 2014, the trial court entered a written judgment awarding the former wife primary physical custody of the four youngest children; finding that an award of child support for the third-born child was not necessary because she was the beneficiary of a trust; finding that the former husband’s gross monthly income exceeded the uppermost level of the Rule 32, Ala. R. Jud. Admin., schedule; and awarding the former wife child support in the amount of $6,800 per month for the fourth-born child and the twins (hereinafter referred to collectively as “the three youngest children”).- In addition, the judgment ordered -the former wife to pay all of the four youngest children’s nonemergency and nonextraordinary out-of-pocket medical and dental expenses and ordered each of the parties to pay one-half of any out-of-pocket expenses incurred for orthodontic services, emergency medical or dental services, or extraordinary medical or dental services. The judgment contained the following pertinent provisions regarding the former wife’s contempt claims against the former husband:
“8. By agreement of the parties, the [former wife’s] allegation that the [former husband] is in contempt of court for failure to timely make a testamentary document bequeathing the ivory ship to the children is hereby dismissed. Physical possession of the ivory ship shall be awarded to the [former wife] to be held in trust for the children of the parties. The [former husband], however, shall have the right to award possession of the ivory ship to an individual child or' multiple children upon his death through testamentary beque[st] as such' ivory ship previously belonged to relatives of the [former husband]. In the event the [former wife] predeceases the [former husband], the ivory ship shall be returned to the physical possession of the [former husband].
[[Image here]]
“12. The [former husband] is found to be in criminal contempt of court for his failure to open an. account in his and [the third-born child’s] name and depos-ite ] the gift to [the third-bom child] of $1,600.00, .as ordered previously by the Court. The [former husband] is sentenced to five (5) days incarceration in the [Huntsyille-]Madison County [Metro] [J]ail, but the Couit hereby suspends said sentence for a period of two (2) *965 years, conditioned upon his compliance with the terms of this Court’s orders. During the course of the proceedings, the [former husband] paid the $1,600.00 to [the third-born child], and the [former wife] acknowledged in open court that no further monies [are] owed to her by the [former husband], for this gift.
“13. The [formei husband] is found to be in criminal contempt of court for his failure to pay the COBRA premiums for the [former wife]. The [former husband] is sentenced to ninety (90) days incarceration in the Huntsville-Madison County Metro Jail. The [former husband] served two (2) days in custody, and the remaining eighty-eight (88) days are hereby suspended for a period of two (2) years conditioned upon the [former husband’s] compliance with the terms of any Order of this Court.”
(Emphasis .added.) Finally, the judgment awarded the former wife an attorney fee in the amount of $22,000.
The former husband timely filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion to alter, amend, or vacate the judgment. In pertinent part, that motion asserted:
“8. The provision in the trial court’s order requiring the [former husband] to pay the sum of ... $6,800.00 ... per month for child support is contrary to law and constitutes an abuse of discretion. ' The amount exceeds that required for the reasonable expenses of the minor children. Moreover, the Order permits the [former wife] to determine whether the minor children attend private school but the amount of child support to be paid by the [former husband] is not contingent upon same. Accordingly, the amount awarded as child support is not supported by the evidence.
“4. The trial court’s increase in child support without any concomitant adjustment of the [former husband’s] responsibility to provide automobile insurance for the parties’ children is an abuse of discretion....
U
“6. The trial court’s directives during trial regarding the disposition of the ‘ivory ship’ and its inference [sic] that the [former husband] would be held in contempt of court unless he agreed to give- the ivory ship to the [former wife] constitute an abuse of discretion. The court was without jurisdiction to make a modification of this property which had been awarded to the [former husband] in the Decree of Divorce. Further, the relief granted was not requested by [the former wife].
“7. The trial court’s finding of criminal contempt for the [former husband’s] alleged failure to open a bank account in the name ■ of the parties’ [third-born] child ... is- contrary to the evidence, contrary to law and constitutes ,an abuse of discretion.
“8. The trial court’s finding of criminal contempt for the [former husband’s] alleged failure to pay COBRA premiums for the [former wife] is contrary to the evidence, contrary to. law and. constitutes an abuse of discretion. Moreover, the sentence imposed by the Court for the [former husband’s] alleged failure to pay said premiums exceeds that permissible by law and the relief requested ■ by the [former wife]. At the motion hearing [regarding the former husband’s motion to split his 90-day sentence and suspend the unserved portion,] which took place' on July 25, 2014, counsel for the [former wife] acknowledged the receipt of the sum of $24,443.50 from the [former husband] for unpaid medical expenses and insurance premiums. At sáid hearing, co,unsel for the [former wife] stated: ‘We are fine to accept this and move on.’ (R; 684). In spite of this *966 concession, the [former husband] still received a suspended jail sentence.
“9. The trial court’s award of an attorney fee and the amount of the attorney fee awarded are contrary to law and contrary to the evidence presented.”
(Emphasis added.)
The former wife also filed a timely post-judgment motion. Following a hearing, the trial court entered an order amending the judgment to correct a clerical error and denying the parties’ postjudgment motions in all other respects. The former husband then timely appealed.
The former husband first argues that the trial court erred by increasing his monthly child-support obligation to $6,800. The trial court received evidence ore ten-us, and the former husband concedes that the evidence established that his gross monthly income exceeded the uppermost limit of the Rule 32, Ala. R. Jud. Admin., schedule.[2] Accordingly, our review is governed by the following principles:
“ ‘The modification of child support for changed circumstances is a matter strictly within the trial court’s discretion. The trial court’s decision will not be disturbed on appeal unless there is an absence of supporting evidence and an abuse of discretion.’ Osborn v. Osborn, 628 So.2d 785, 786 (Ala.Civ.App.1993). ‘Under the ore tenus rule, the trial court’s judgment is presumed correct and this court will not reverse the judgment absent a showing that the trial court’s findings are plainly and palpably wrong or that the trial court abused its discretion.’ Tompkins v. Tompkins, 843 So.2d 759, 764 (Ala.Civ.App.2002).... ‘“[T]his court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court.”’ Schiesz v. Schiesz, 941 So.2d 279, 289 (Ala.Civ.App.2006) (quoting Sellers v. Sellers, 893 So.2d 456, 461 (Ala.Civ.App.2004)).
“... The law is well settled that when the parties’ combined gross monthly income exceeds [the uppermost limit of the Rule 32 schedule], the trial court may use its discretion in calculating child support and its decision will be subject to reversal only upon a finding that the trial court exceeded its discretion. In TenEyck v. TenEyck, 885 So.2d 146 (Ala.Civ.App.2003), this court said:
“ ‘ “When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor’s ability to pay for those needs. To avoid a finding of an abuse of discretion on appeal, a trial court’s judgment of child support must satisfy both prongs.” ’
“885 So.2d at 157 (quoting Dyas v. Dyas, 683 So.2d 971, 973-74 (Ala.Civ.App.1995), aff'd and remanded, 683 So.2d 974 (Ala.1996)).”
Kelly v. Kelly, 981 So.2d 423, 425-26 (Ala.Civ.App.2007).
The former husband does not argue that he does not have the ability to pay $6,800 per month in child support; therefore, he has waived that argument. *967 See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”). However, he does argue that the award of $6,800 per month in child support. is not rationally related to the reasonable and necessary needs of the three youngest children,[3] taking into account the lifestyle to which those children were accustomed and the standard of living they had enjoyed before the divorce. Specifically, the former husband argues that the award of $6,800 per month in child support improperly included expenses that the former wife would incur regardless of whether she had custody of the three youngest children, such as her'expenses for utilities,- homeowner’s insurance, automobile insurance, pest control, termite control, and a security system for her house. The record contains evidence from which the trial court reasonably could have found that the former wife would incur monthly expenses that were solely attributable to the three youngest children totaling approximately $5,672 and that the portions of her other monthly expenses that she attributed to the three youngest children, which included portions of her- expenses for such things as utilities, homeowner’s insurance, automobile insurance, pest control, termite control, pool maintenance, a security system for her house, and gasoline and oil for her automobile, totaled approximately $1,829.
In Call v. Call, 135 So.3d 254 (Ala.Civ.App.2013), the parties had four children and the father’s gross monthly income exceeded the uppermost limit of the Rule 32 schedule. The mother introduced evidence indicating that her monthly living expenses totaled $6,630, with only $1,630 of that amount being solely attributable to the parties’ children. The Tuscaloosa Circuit Court awarded - the mother primary physical custody of the parties’ children and $5,000 per month in child support, and the father, appealed. The father argued that the Tuscaloosa Circuit Court’s award of $5,000 per month in child support was not rationally related to the ■ reasonable and necessary meeds of the children. Despite the fact that only $1,630 of the mother’s monthly .expenses were solely attributable to the parties’ children, we rejected that argument and affirmed the Tuscaloosa Circuit Court’s judgment insofar as it had awarded the mother $5,000 per month in child support. In pertinent part, we stated:
“[Although only six of the items on the [mother’s] list of her and the children’s estimated monthly living expenses relate solely to the children — $600 for clothes and shoes, $140 for piano lessons, $120 for tennis- lessons, $220 for baseball lessons, $300 for entertainment such as movies, and $250 for preschool tuition for the youngest child — ‘the [Tuscaloosa Circuit Court]. could reasonably have concluded that the [mother’s] expenses reflected the actual cost of housing, food, and other necessities for the [mother] and the [four] children, with no extravagance.’ [Wright v. Wright, 19 So.3d 901, 907 (Ala.Civ.App.2009).] ‘Accordingly, we conclude that the child-support award does “relate to the reasonable and necessary needs of the child[ren], taking into account the lifestyle to which the children were] accustomed and the standard of living the children] enjoyed before the divorce.” ’ Id. (quoting Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App.1995)).”
Id. at 262-63.
In the present case, based on our holding in Call, we conclude that the trial court *968 reasonably could have concluded from the evidence before it that $6,800 “ ‘reflected the actual cost of housing, food, and other necessities for the [former] wife and the [three youngest] children, with no extravagance.’ ” Id. (quoting Wright v. Wright, 19 So.3d 901, 907 (Ala.Civ.App.2009)). Therefore, we conclude “ ‘that the child-support award [in the amount of $6,800 per month] does “relate to the reasonable and necessary needs of the [three youngest] child[reh], taking into account the lifestyle to which the [three youngest] children were] accustomed and the standard of living the [three youngest] children] enjoyed before the divorce.”’” Id. (quoting Wright 19 So.3d at 907, quoting in turn Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App.1995)).
The former husband also argues that the trial court improperly exercised its discretion in awarding the former wife $6,800 per month in child support because, he says, the trial court’s purpose in awarding that amount was to punish him rather than to provide for the reasonable and necessary needs of the three youngest children. However, we cannot consider that argument because the .former husband did not present it to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [an appellate court’s] review is restricted to the evidence and arguments considered by the trial court.”). Moreover, even if we- could consider that argument, our conclusion that the trial court’s child-support award rationally relates to the reasonable and necessary needs of the three youngest children would compel us to reject that argument..
The former husband also argues that the trial court improperly exercised its discretion in awarding the former wife $6,800 per month in child support because, he says, that award relieved the former wife of any obligation to contribute to the support of the three youngest children. Although the former husband’s post-judgment motion did not present that argument to the trial court, the transcript of the hearing regarding the parties’ post-judgment motions indicates that the former husband’s counsel presented that argument to the trial court at that hearing. Therefore, we will consider it.
The undisputed evidence established that the former wife had been employed by a business where she did “office work” and “helped with sales” from October 2012 to September 2013, that her employer had ceased doing business in September 2013, that she had earned $10 per hour while she was employed, that she had applied for jobs after September 2013 but had not been offered employment, and that she was unemployed and had no income when this action was tried. Although a trial court is authorized to, find that an unemployed parent is voluntarily unemployed and, upon making such a finding, to impute income to him or her, see Rule 32(B)(5), Ala. R. Jud. Admin., in the present case the trial court did not find that the former wife was -voluntarily unemployed and did not impute income to her.
“The trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent ds voluntarily unemployed or underemployed ‘is to be made from the facts presented according to the judicial discretion of the trial court.’ Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992). See also Rule 32(B)(5), Ala. R. Jud. Admin.”
Clements v. Clements, 990 So.2d 383, 394 (Ala.Civ.App.2007). Because the record contains evidence indicating that the for *969 mer wife had applied for other jobs after she lost her job in September 2013 and that she had not been offered employment, the trial court’s decision not to find that the former wife was voluntarily unem-' ployed is supported by the evidence and, therefore, is not clearly wrong or erroneous. See Clements, 990 So.2d at 395 (“[B]ecause there was .evidence in the record indicating that the wife had been unable to find employment due to health reasons and unsuccessful job searches, the decision of the [Jefferson Circuit .Court] not to impute income to the wife was not clearly erroneous or plainly wrong.”). Accordingly, the trial court did not improperly exercise its discretion by not requiring the former wife to contribute to the support of the three youngest children.
The former husband next argues that the trial court erred in finding him in criminal contempt for failing to pay the former wife’s health-insurance premiums for 18 months.
“ ‘[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Combs v. Ryan’s Coal Co., 785 F.2d 970 (11th Cir.1986); and United States v. Turner, 812 F.2d 1552 (11th Cir.1987).... In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:
“‘“The essential elements of the criminal contempt for which punish^ ment has been imposed on [the defendant] are that the court entered a lawful order of reasonable specificity, [the defendant] violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt.”
“‘Turner, 812 F.2d at 1563. The Turner court also stated, quoting Gordon v. United States, 438 F.2d 858, 868 n. 30 (5th Cir.1971):
“ ‘ “ ‘The test’ is whether the1 evidence is sufficient to justify the trial judge, as trier of the facts, in con-eluding' beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of. his innocence.1 Such is the substantial evidence test.’ ”
“‘Turner, 812 F.2d at 1563.’
“Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001).”
Ezell v. Graham, 135 So.3d 979, 983 (Ala.Civ.App.2013).
The former husband does not argue that the divorce judgment ordering him to pay the former wife’s health-insurance premiums for 36 months was not a lawful order or that it was not reasonably specific. Therefore, he has waived those arguments. See Boshell, supra, Moreover, he does not dispute that he failed to pay the former wife’s health-insurance premiums 18 of the 36 months he was required to pay them. Rather, he argues that he should not have been held in criminal contempt because, he says, the former wife’s refusal to provide him with the bills for her health-insurance1 premiums made it impossible for him to pay her health-insurance premiums for those 18 months and, thus, excused his failure to comply with the provision of the divorce judgment requiring him to pay them. However, a review of the former husband’s post-judgment motion and the transcript of the hearing regarding the parties’ post-judgment motions reveals that the former husband did not present that argument to the trial court. The former husband’s con- *970 elusory assertion in his postjudgment motion that the trial court’s finding of criminal contempt based on his failure to pay those premiums was “contrary to the evidence, contrary to law and constitutes an abuse of discretion” is not tantamount to arguing that the former wife’s refusal to provide him with the bills for her health-insurance premiums made it impossible for him to pay those premiums for 18 months. An appellate court cannot consider arguments that were not presented to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d at. 410 (“[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [an appellate court’s] review is restricted to the evidence and arguments considered by the trial court.”). Therefore, we will not consider the former husband’s argument asserting the defense that the former wife’s refusal to provide him with the bills for her health-insurance premiums made it impossible for him to pay them.
The former husband also argues that the former wife failed to prove that his failure to pay her health-insurance premiums was willful. However, the former husband did not present that argument to the trial court. Therefore, we will not consider it. Id.
The former husband also argues that the trial court’s judgment should be reversed insofar as it imposed a 90-day sentence for his contemptuous failure to pay the former wife’s health-insurance premiums. Specifically, he argues:
“With regard to the sentence imposed, the court determined that the [former husband] was to be sentenced to ninety (90) days incarceration. (C. 89). The trial court’s mitten order does not specify how that sentence was arrived at and is thereby flawed. In candor, the court stated when it imposed the sentence verbally that she was sentencing
the [former husband] to five days for eighteen (18) months during which he failed to make COBRA payments. (R. 676). However, verbal orders have no effect. Ala. R. Civ. P. 58; Ex parte Madison County Department of Human Resources, 136 So.3d 485, 490 (Ala.Civ. App., 2013).
“This Court has not hesitated to reverse judgments in contempt actions which imposed ‘lump’ sentences. Lowe v. Lowe, 561 So.2d 240 (Ala.Civ.App.1990); Zimmerman v. Zimmerman, 655 So.2d 1042 (Ala.Civ.App.1995).
“Further, assuming that the court found eighteen (18) instances of contempt, the trial court erred in so doing. The [former wife] presented evidence that as of April 2013, the possibility of COBRA coverage was foreclosed. ([The former wife’s] Ex. 4; R. 23). After that time, including after her contempt action was filed, the [former husband] was powerless to mitigate any potential jail sentence because he could not pay any premium. As stated previously, the [former husband] cannot be held in contempt for not doing that which cannot be done. See Ex parte Baker, 623 So.2d 304, 306 (Ala.Civ.App.1993). Accordingly, the trial court’s judgment is due to be reversed.”
(Emphasis added.)
Although the former husband’s postjudgment motion asserted that the 90-day sentence the trial court had imposed for his contemptuously failing to pay the former wife’s health-insurance premiums “exceeded] that permissible by law,” that assertion is not tantamount to arguing that the trial court’s judgment had erroneously failed to explain how the 90-day sentence was “arrived at.” At the hearing regarding the parties’ postjudgment motions, the former husband’s counsel asserted:
*971 “Your Honor the 90-day sentence we believe to be excessive. If he did not, in fact, assist [the former wife] in enrolling for COBRA continuation coverage], as this Court found, then that would be one act of contempt which would be subject to [a] five-day sentence.
“He could not be held in contempt for not paying COBRA. There was no COBRA to pay. And, apparently, that’s where the 90 days came from. .After COBRA was no longer available he couldn’t pay for it.”
Again, those assertions are not tantamount to asserting that the 90-day' sentence was erroneous because the trial court had failed to explain how that sentence had been “arrived at” in its written judgment. Accordingly, because the former husband did not present to the trial court his argument that the trial court had erroneously failed to explain in its written judgment how the 90-day sentence was “arrived at,” we cannot consider that argument. See Andrews, supra.
The former husband did present to the trial .court his argument that it was impossible for him to comply with the divorce judgment insofar as it required him to pay the former wife’s health-insurance premiums because she was no longer eligiblé for COBRA continuation benefits after April 2013; however, that argument has no merit because the evidence indicates that the former husband’s failure to pay the former wife’s health-insurance premiums between the date the divorce judgment was entered and April 2013 was the reason the former wife was no longer eligible for COBRA continuation coverage after April 2013. The former wife’s exhibit 4 was a letter dated April 8, 2013, from Ceridian COBRA Services and addressed to the former wife. It stated: “This is to advise you that you are no longer eligible for COBRA Continuation due to: Failure to comply with premium payment requirements.” The trial court reasonably could have found that, had the former husband timely begun paying the former wife’s health-insurance premiums as he was required to do by the divorce judgment, the former, wife would not have lost her. eligibility for COBRA continuation coverage.
The former husband also argues that the trial court erred in finding him in criminal contempt for failing to open the savings account and deposit therein the $1,600 gift. The father does not argue that the provision in the divorce judgment requiring him to open the savings account and deposit therein the $1,600 gift was not a lawful order of reasonable specificity. Therefore, he has waived that argument. See Boshell, supra. He also does not dispute the fact that he failed to open the savings account and deposit therein the $1,600 gift. Rather, his sole argument is that he tried multiple times to open the savings account but was unable to do so because, he says, the bank required the third-born child to participate in the opening of the savings account and she refused to cooperate. However, a review of the former husband’s postjudgment motion and the transcript of the hearing regarding the parties’ postjudgment motions indicates that he never presented that argument to the trial court. Therefore, we will not consider it. See Andrews, supra.
The former husband next argues that the trial court erred in awarding possession of the ivory ship to the former wife because, he says, the award of possession of. the ivory ship to him in the divorce judgment was part of the division of the parties’ property and such a property division may not be altered more than 30 days after the judgment containing it is entered.
‘“A trial court, loses jurisdiction to modify a property division in a divorce judgment 30 days after the entry of *972 the judgment. Hocutt v. Hocutt, 491 So.2d 247, 248 (Ala.Civ.App.1986). This court has held, however, that if the provisions of a property settlement are vague or ambiguous, a judgment interpreting or clarifying the property settlement does not constitute a modification of the property settlement. Williams v. Williams, 591 So.2d 879, 880 (Ala.Civ.App.1991); see also Granger v. Granger, 804 So.2d 217, 219 (Ala.Civ.App.2001); Grayson v. Grayson, 628 So.2d 918 (Ala.Civ.App.1993). Further, a trial court has the inherent power to interpret, , clarify, and enforce its orders and judgments. Granger v. Granger, supra; Patterson v. Patterson, 518 So.2d 739, 742 (Ala.Civ.App.1987).’
“Dunn v. Dunn, 12 So.3d 704, 709 (Ala.Civ.App.2008).”
Barnes v. Barnes, 28 So.3d 800, 801-02 (Ala.Civ.App.2009).
In Hudson v. Hudson, 701 So.2d 13, 15 (Ala.Civ.App.1997), this court held that a' provision of a divorce judgment requiring a husband to make a will leaving his estate to his wife and children effected an equitable conversion that conveyed to his wife and children equitable title to the husband’s estate and left him with bare legal title to his estate, which he held in trust for his wife and children. Based on that holding, we conclude, in the present case, that the' provision of the divorce judgement allowing-the former husband to retain possession of the ivory ship on the condition that he make a will leaving it to the parties’ children effected an equitable conversion that conveyed to the parties’ children the equitable title to the ivory ship and left the former husband with bare legal title, which he held in trust for the parties’ children. Thus, because that provision disposed of title to the ivory ship, we conclude that it constituted part of the parties’ property division. ■ Consequently, although the trial court had jurisdiction to enforce that provision, it ’lacked jurisdiction to modify it more than 30 days after the entry of the divorce judgment. See Barnes, supra. Therefore, the provision of the trial court’s judgment purporting to transfer possession of the ivory ship to the former wife and to grant the former husband the right to bequeath the ivory ship to fewer than all. the parties’ children was invalid; accordingly, we reverse this aspect of the trial court’s judgment and remand the cause to the trial court for it tp excise this provision from its judgment.
The former husband’s final argument is that the trial court erred in awarding the former wife a $22,000 attorney fee because, he says, some of that fee must be attributable to services rendered by the former wife’s counsel in connection with her criminal-contempt claims. Although the former husband’s postjudgment motion asserted that the trial court’s awarding the former wife an attorney fee was “contrary to law,” it did not specifically assert that that award was: contrary to law because part of it was for services the former wife’s counsel had rendered in connection with the former wife’s criminal-contempt claims. At the hearing regarding the parties’ postjudgment motions, the former husband’s counsel made the following argument:
“Your Honor, with regard to the award of attorneys fees, first of all, we don’t think they’re indicated in this case. But, secondly, [the former wife’s counsel’s] bill included a $2,280 charge for records from a bank. We submit those . are not-recoverable under law and would ask this Court to review its award.”
Again, the former husband did not specifically assert that the attorney-fee award was erroneous because part of it was for services rendered by the former wife’s *973 counsel in connection with the former wife’s criminal-contempt claims. Because the former husband did not present to the trial court his argument that the attorney-fee award was erroneous because some of it must have been for services rendered by the former wife’s counsel in connection ■with her criminal-contempt claims against the former husband, wé cannot consider that argument. See Andrews, supra.
In summary, we (1) reverse the trial court’s judgment insofar as it purports to modify the provision of the divorce judgment disposing of the ivory ship, (2) affirm the trial court’s judgment in all other respects, and (3) remand the cause with instructions for the trial court to excise from its judgment the provision purporting to modify the provision of the divorce judgment disposing of the ivory ship. The former wife has requested that this court award her an attorney fee on appeal; that request is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Ml the judges concur.

. We note the discrepancy between the trial court's oral statement finding that the former husband had not paid the former wife’s health-insurance premiums for 18 months, on the one hand, and his payment to the former wife of her health-insurance premiums for all 36 months required by the divorce judgment, on the other. The record does not explain the discrepancy. •

. The former husband indicated on his CS-41 child-support income affidavit that his gross monthly income was $27,532, an amount that exceeds the uppermost limit of the Rule 32 schedule, which is $20,000. In addition, the trial court had before it substantial evidence from which it reasonably could have found that the former husband’s gross monthly income was actually $34,865.33.

. As noted above, because the third-born child was the beneficiary of a trust, the judgment made no provision for her support;