PITTMAN, Judge.
Wendy Graham Ezell (“the mother”) appeals from a judgment of the Choctaw Circuit Court, holding her in contempt for her willful failure and refusal to abide by the previous orders of the court concerning visitation by Christopher Graham (“the father”) with the parties’ minor son; sentencing her to five days in jail; and suspending the sentence conditioned upon her future compliance with the visitation schedule. We reverse.

Factual and Procedural Background

The parties were divorced in 2002; the mother was awarded sole physical custody of the parties’ four-year-old son, and the father was granted visitation rights. In 2006, the son indicated that he did not want to visit with, or to receive telephone calls from, the father. Initially, the mother compelled the son to visit with the father. Later, however, after the son had displayed physical symptoms — headaches, stomach aches, nausea, night sweats, nightmares, and decreased appetite — every time a visitation event approached, the mother took the son to be evaluated by Dr. Rita Lum, a board-certified child and adolescent psychiatrist.
Dr. Lum diagnosed the son as suffering from a generalized anxiety disorder, as well as major depression, oppositional-defiant disorder, and possible attention-deficit disorder. She prescribed medication — ari-piprazole and escitalopram oxalate — and recommended counseling for the son. Jean Merrell, a board-certified clinical counselor and psychotherapist, has been the son’s counselor since 2006. Her office *981 notes reflect that the son had expressed a desire not to visit the father after the father’s remarriage and the birth of a daughter to the father and stepmother. Merrell met with both parents to discuss visitation issues. She recommended that the son not be forced to visit with the father, but that visitation be gradually and incrementally resumed on a “slow-paced schedule of relationship building” between the father and the son.
In May 2010, the father filed a petition seeking a finding of contempt as to the mother, alleging that she had failed to allow him to exercise the visitation rights set out in the parties’ divorce judgment. In November 2010, the father filed a motion for an emergency hearing concerning visitation, alleging that he had seen the son for a portion of only 11 days in 2010. Following several continuances, the trial court conducted a hearing on August 10, 2011. On August 25, 2011, the trial court entered an order requiring that the father have visitation beginning on August 27, 2011, from 9:00 a.m. to 10:80 a.m. in a public park; that the visitation be facilitated and supervised by social worker Vickie Hearn; and, thereafter, that visitation occur on alternating weekends beginning at 9:00 a.m. and lasting as long as Hearn determined was appropriate and beneficial to the son. ■ Following the entry of the August 25, 2011, order, the father had three brief visits with the son, two of which were cut short by the son, who stated that he was not feeling well or that he wanted to see a movie with his friends. The father contacted Hearn in an effort to arrange more visits; Hearn contacted the mother, but she was unsuccessful in setting up additional visitation.
On October 21, 2011, the father filed another contempt petition, alleging that the mother had failed to abide by the trial court’s August 25, 2011, order. On December 7, 2011, the father moved for an emergency order concerning Christmas holiday visitation. Following a telephone conference with the parties, the trial court ordered that the father have visitation on December 26, 2011. The trial of the father’s contempt petitions was set, and continued, several times. In setting the case for trial on September 5, 2012, the trial court ordered that the father have visitation on July 28 and August 12, 2012, and telephone contact with the son twice per week.
At trial, 4 witnesses — the father, the mother, the son, who was then 13 years old, and Hearn — testified. The trial court also received the deposition testimony of Dr. Lum and Merrell. The father stated that he had filed the contempt petition in May 2010 because, in the years following the parties’ divorce, his visits with the son had grown shorter and farther apart; sometimes, he said, he had not seen the son for months at a time. The father testified that, even after the entry of the trial court’s August 25, 2011, order establishing a revised visitation schedule, he had not been able to see the son between December 26, 2011, and July 28, 2012. When the father was questioned about what actions the mother had taken that indicated her willful failure to abide by previous visitation orders, the father repeated the eonclusory allegations contained in his petitions, stating, for example, that the mother “would not let [him] have his son when she was supposed to” or that the mother “would not allow [him] to pick up [the] son and have visitation with him.”
The father maintained that he was prepared to conduct his visits in a manner that would further the best interests of the son. He acknowledged that the son’s anxiety problems had existed since the son was seven years old, and he agreed that, because of the anxiety problems, the son should not be forced to visit him. The son *982 testified that he did not want to visit the father because, he said, he “gets sick” when he visits. He testified that the mother had not prevented him from visiting the father.
The mother testified that she had never failed or refused to let the son visit the father. During times when she had compelled the son to visit with the father, the son had become sick with vomiting, diarrhea, and night sweats. The mother stated that she was not willing to punish the son in order to make him visit the father, but, she said, she would cooperate, within the limitations of the recommendations made by Dr. Lum and Merrell, in order to reestablish the son’s relationship with the father.
Dr. Lum testified that she had no information indicating that the mother was the source or cause of the son’s unwillingness to visit with the father. To the contrary, Dr. Lum said, the mother had encouraged the son to visit the father and had stated that her life would be easier if the son would visit with the father. Dr. Lum reiterated her recommendation that the son not be forced to visit the father against his will. Nevertheless, she opined that, because the son’s anxiety appeared to be triggered by visits with the father, the son would not be able to visit the father without both medication and therapy. She stated that the son, with the mother’s approval, had recently decided to discontinue the psychotropic drugs that had been prescribed for him. The father stated that he had been unaware of any specific issues concerning the son’s medications but that he preferred that the son not take drugs as strong as those that had been prescribed by Dr. Lum.
Merrell stated that during the period between October 1 and December 26, 2011, when the son had not visited the father, the son had been more sociable; his mood had leveled off; and he had not experienced night terrors. Merrell agreed with Dr. Lum that the son should not be forced to visit with the father and that the mother had not caused the son’s reluctance to visit. She stated: “I want to make it very clear that the problem is inside of [the son]. [1]⅛ not this man or this woman. Okay? I really want — I understand that somehow has gotten confused. This is [the son’s] biochemistry, okay, and that is why medication is needed as well as the counseling.” On cross-examination Mer-rell confirmed that she had directly asked the son why he did not want to visit the father. To her question, the son had replied, “Because I get sick.”
On September 28, 2012, the trial court entered a judgment that states, in pertinent part:
“2. The court finds from the evidence and testimony that [the mother] has willfully failed and refused to allow [the father] to exercise his court-ordered visitation with his minor son ... as ordered in the divorce [judgment] of May 22, 2002, and the court order of August 25, 2011. The court does not find a justifiable reason for the actions of [the mother].
“3. The [mother] is hereby held in contempt of court for her refusal to abide by the previous orders of this court concerning visitation by the [father] with his minor son.
“4. As a result of her contempt, the [mother] is hereby ordered to serve five days and five nights in the Choctaw County Jail for her contempt of court.
“5. The sentence is hereby suspended, conditioned upon the [mother’s] complying with the remaining provisions of this order concerning visitation by the [father] with the minor child. In the event the [father] does not receive all visitation with the minor child as ordered hereinafter, a writ for the arrest *983 of the [mother] shall be issued without any additional hearing and she shall be required to serve the entire five day sentence as stated in paragraph four.”
The judgment further set out a visitation schedule for the father, directed that visitation be facilitated and supervised by Hearn, ordered that Hearn be compensated at the rate of $25 per hour, and required the mother to pay all costs associated with Hearn’s supervision until December 31, 2012, after which the parties would share the cost. Finally, the trial court set Monday, March 11, 2013, “for a review of the visitation schedule and to determine what changes are to be made to the ... schedule.”
On October 22, 2012, the mother filed a notice of appeal. On October 23, 2012, the trial court issued a writ of arrest for the mother for an alleged violation of the September 28, 2012, judgment. This court stayed execution of the writ of arrest on October 26, 2012.

Standard of Review

“[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Combs v. Ryan’s Coal Co., 785 F.2d 970 (11th Cir.1986); and United States v. Turner, 812 F.2d 1552 (11th Cir.1987).... In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:
“ ‘The essential elements of the' criminal contempt for which punishment has been imposed on [the defendant] are that the court entered a lawful order of reasonable specificity, [the defendant] violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt.’
“Turner, 812 F.2d at 1563. The Turner court also stated, quoting Gordon v. United States, 438 F.2d 858, 868 n. 30 (5th Cir.1971):
“ ‘ “The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence. Such is the substantial evidence test.” ’
“Turner, 812 F.2d at 1563.”
Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001).

Discussion

Before proceeding to the mother’s arguments, we address the father’s contention that we must dismiss the appeal as having been taken from a nonfinal order because the September 28, 2012, judgment set the matter for further review of the visitation schedule. We disagree. The September 28, 2012, judgment is appeal-able by virtue of its being an adjudication of criminal contempt. See Rule 70A(g), Ala. R. Civ. P.
The mother argues that the trial court was not presented with evidence indicating, beyond a reasonable doubt, that she had willfully failed and refused to allow the father to exercise visitation with the son. We agree.
This court was presented with similar facts in Shellhouse v. Bentley, 690 So.2d 401 (Ala.Civ.App.1997). There, the parties’ 15-year-old daughter, who had not had a good relationship with her mother during the parties’ marriage, refused to visit with the mother after the parties’ divorce. The father, the child’s custodian, had transported the daughter to meet the *984 mother at the time and place appointed for visitation exchanges, but the daughter had refused to leave the father’s vehicle without physical force. The trial court held the father in contempt for “ ‘willfully and intentionally interfering’ ” with visitation between the mother and the daughter. 690 So.2d at 402. This court reversed, holding that “[t]here was no evidence to indicate that the father ha[d] willfully or intentionally interfered with the visitation schedule.” 690 So.2d at 403. The court further stated:
“We note the court’s concern to establish a relationship between the daughter and mother; however, the court must consider the best interests and welfare of the child, as well as the child’s maturity and age. Clark v. Blackwell, 624 So.2d 610 (Ala.Civ.App.1993); French v. Lyford, 636 So.2d 437 (Ala.Civ.App.1994). The North Carolina Court of Appeals has dealt with a problem similar to the one we have here; in Mintz v. Mintz, 64 N.C.App. 338, 307 S.E.2d 391 (1983), that court held that it violated the custodial parent’s due process rights to find that parent in contempt for the child’s refusal to visit the noncustodial parent. That court also stated that, based on the child’s age and maturity, a court could consider the child’s willingness or unwillingness to visit in determining the best interests and welfare of the child.”
690 So.2d at 403-04. In Hagler v. Hagler, 460 So.2d 187 (Ala.Civ.App.1984), this court stated:
“There are circumstances where it is reasonable, equitable and to the best interest of children that they not be required to visit with a non-custodial parent because of their unwillingness or fear to do so. Such a determination could be made by a trial court in a case where the evidence reasonably satisfied that court that it was not in the best interest of children to be made to visit with a non-custodial parent where they were so unwilling to visit that parent that adverse psychological damage would result and that no good would result from forced visitation. However, such a case is rare and the exception, for it is an extreme decision that restricts an otherwise relatively qualified parent from visiting his or her child
“On the other hand, regardless of a child’s fears and wishes, a trial court may, and normally should, require visitation even if it is forced upon a child, for the desires of a child might be given absolutely no credence in visitation litigation when the trial court is reasonably satisfied from the evidence that a child is merely parroting the wishes of the custodial parent, or that the child is too immature to form a considered opinion, or where the child expresses fears or unwillingness to visit without any reasonable basis or foundation.”
460 So.2d at 189. See also Clark v. Blackwell, 624 So.2d 610, 612 (Ala.Civ.App.1993) (following the general rule of required, or even forced, visitation when there was conflicting evidence “regarding the father’s fitness to continue to have visitation rights”). Cf. Shires v. Shires, 494 So.2d 102, 103 (Ala.Civ.App.1986) (departing from the general rule of required, or even forced, visitation; affirming a trial court’s judgment denying a father’s post-divorce request for visitation with his 18-year-old son; and stating that, “given the child’s advanced age ... and persistent reluctance to visit with his father,” the trial court could properly have found “that to force the child to visit would not be in the child’s best interest”).
The present case presents one of those exceptional circumstances in which it is not in the best interests of the child to be forced to visit the noncustodial parent because the child’s unwillingness stems from *985 an anxiety disorder and forced visitation could cause “adverse psychological damage.” Hagler, 460 So.2d at 189. According to the uncontroverted testimony of the expert witnesses, Dr. Lum and Merrell, the existence of the son’s anxiety disorder indicates that he should not be forced to visit with the father before he is “able” to do so. Dr. Lum expressly stated that the son would not be “able” to visit with the father without both medication and therapy; she also stated that the son had discontinued using the medications that Dr. Lum had prescribed for him. Even the father acknowledged that the son had long experienced anxiety problems and admitted that the son should not be forced to visit him.
The present case does not fit within the general, required-visitation rule to which the Hagler court alluded because there is no evidence indicating that the son is “merely parroting the wishes of the [mother], or that the [son] is too immature to form a considered opinion, or [that the son has expressed] fears or unwillingness to visit without any reasonable basis or foundation.” Hagler, 460 So.2d at 189. The expert testimony indicates that the son’s anxiety is entirely biochemical, has been caused by a mental disorder, and, therefore, has a recognized, if not a reasonable, basis or foundation.
At trial, the father presented no evidence indicating that the son’s visitation-induced anxiety had been caused or manipulated by the mother. On appeal, he does not argue that the mother’s actions had brought about the son’s unwillingness to visit him. Cf H.H.J. v. K.T.J., 114 So.3d 36 (Ala.Civ.App.2012) (arguing that the child had been manipulated by the mother and that the child’s reluctance to visit was unreasonable). In his appellate brief, however, the father refers to a report of the guardian ad litem that states, in pertinent part:
“As [guardian ad litem], I believe that it is in the best interests of my client to have visitation with his father. [The son] tells me that he dearly loves his father and really cannot give me a reason why he doesn’t want to visit. I have a sneaking suspicion that [the] mother is incubating and exacerbating the problems that [the son] is having.”
(Emphasis added.) The guardian ad li-tem’s report, dated September 5, 2012, contains no certificate of service. The State Judicial Information System (“SJIS”) case-action summary does not indicate that the report was ever filed in the trial court. In her appellate brief, the mother asserts that the report was submitted to the trial court after the trial and before the hearing on her postjudgment motion, but, she says, she had been unaware of the existence of the report at the time of that hearing. The trial court’s judgment does not refer to or explicitly rely upon the report, and it is clear that any such reliance would have been unwarranted because the guardian ad litem’s “sneaking suspicion” is not evidence and the parties had no opportunity to contest the guardian ad litem’s conclusions in open court. See Ex parte R.D.N., 918 So.2d 100 (Ala.2005) (quoting Ex parte Berryhill, 410 So.2d 416, 418 (Ala.1982) (“‘The fundamental principle is that the decision of a court must be based on evidence produced in open court lest the guarantee of due process be infringed.’ ”), 918 So.2d at 104, and Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (“ ‘The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.’”), id., and holding that “fundamental principles of due process are violated when a guardian ad litem *986 communicates to the trial judge ex parte her recommendations regarding custody, without the knowledge or consent of the parties and without the parties’ having an opportunity to contest those recommendations in open court,” id. at 103).
We conclude that the evidence was insufficient to warrant the trial court in determining beyond a reasonable doubt that the mother had willfully failed and refused to allow the father to exercise his court-ordered visitation with the son. Therefore, we reverse the trial court’s September 28, 2012, judgment, and we remand the cause with instructions to vacate the contempt finding.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS, J., concur.
MOORE, J., concurs in the result, with writing.
DONALDSON, J., dissents, with writing.